James C. SCHUM, Appellant,

v.

SOUTH BUFFALO RAILWAY CO.,
Appellee.

No. 457, Docket 73-2276.

United States Court of Appeals,
Second Circuit.

Argued Jan. 18, 1974.

Decided April 25, 1974.

Grover R. James, Jr., Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., on the brief), for appellee.

Lauren D. Rachlin, Buffalo, N. Y. (Rachlin & Rachlin, Buffalo, N. Y., on the brief), for appellant.

Before FRIENDLY and MANS-FIELD, Circuit Judges, and ZAM-PANO, District Judge.*

ZAMPANO, District Judge:

James C. Schum, a former employee of the South Buffalo Railway Company, instituted this suit with a complaint alleging four causes of action, one based upon wrongful discharge by the railroad in violation of the collective bargaining agreement between the union and the company, and the remaining three counts against the union and its General Chairman for breach of their duty of fair representation. The district court granted the railroad's motion for summary judgment on the ground Schum was barred from recovery because he failed to exhaust the remedies available to him under the collective bargaining contract. In so doing, the court rejected Schum's contention that this failure was excused by his reliance upon the union to process his grievance within the time-table established in the labor agreement. We reverse and remand.[1]

The facts may be briefly stated. On March 11, 1966, Schum, a longtime employee of the railroad, received personal injuries during the course of his employment. Although he attempted to return to work in September and October of 1966, company doctors were unable to certify that he was physically able to resume his employment. Thereafter a dis-

pute arose between Schum and the company's representatives concerning his ability to perform his regular duties and, on March 23, 1967, he was ordered to report for another physical examination on March 27, 1967. When Schum's request for a postponement was denied, he refused to appear. The following day he received a notice that a disciplinary hearing would be held on April 3, 1967. Schum informed the railroad that his lawyer would be unavailable on that date and asked that the hearing be adjourned one week. The request was denied and Schum was subsequenty discharged for insubordination. On April 23, Schum wrote a letter to the national headquarters of his union in Cleveland seeking advice and assistance. Within a few days, General Chairman Dolan of the local met with Schum and agreed to process his grievance through the administrative appellate procedures set forth in the bargaining agreement.

Essentially the contract creates two administrative levels for the handling of grievances. The first step allows either the aggrieved employee or the union's representative to present the grievance to a high ranking company official for consideration. If the claim is disallowed, an appeal must be filed within six months by the employee or the union with the National Railroad Adjustment Board. If a timely appeal is not instituted, the claim is barred and the company's decision becomes "final and binding." The contract further provides "that the parties may by agreement in any particular case extend the 6 months' period herein referred to."

General Chairman Dolan completed the first step of the grievance procedure on May 9, 1967, by requesting that the company reconsider its decision to terminate Schum's employment. On May 17, 1967, the railroad affirmed the discharge. In the following months, there was further correspondence between the

---

* Of the United States District Court, District of Connecticut, sitting by designation.

1. This appeal was decided after appropriate certification, pursuant to Rule 54(b), F.R. Civ.P., that there was no just reason for delay.

railroad and the union with respect to Schum's case, but the union made no effort to carry a timely claim to the second step of the grievance procedure. On November 15, 1967, the union unsuccessfully attempted to obtain the company's consent to an extension of the six-month limitations period in order to process Schum's appeal to the Board. It was not until Dolan was replaced as General Chairman in early 1968 that Schum claims he first learned, much to his chagrin, that the time period to appeal had elapsed and that the union had failed to take appropriate action to preserve his grievance for a hearing before the Board. Unable to pursue further the administrative remedies, Schum commenced the instant action for reinstatement and damages.

In Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), an action commenced under the provisions of the Labor Management Relations Act, 29 U.S.C. § 141 et seq., Maddox sued his employer for severance pay allegedly due him under the terms of the collective bargaining agreement between his employer and his union. Although the contract provided for a three-step grievance procedure followed by binding arbitration, Maddox made no effort to seek arbitration. The Supreme Court held that the contractually created grievance procedures were exclusive and that Maddox was required to attempt to exhaust these procedures before instituting a court suit against the company. Left open by the Court was the question concerning the nature and form of the remedy available to an employee whose union refused to press his claim or presented it with little interest or care.

This undecided issue was squarely answered in the landmark case, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.E.2d 842 (1967), wherein the Supreme Court stated that in an action against his employer for wrongful discharge an employee will be excused from the exhaustion-of-remedies requirement upon a showing that the union breached its duty of fair representation in processing his claim. *Id.* at 186. While not defining precisely the duty of fair representation, the Court noted that "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion. . . ." *Id.* at 191. The Court further acknowledged that the employee may sue the employer and the union in separate actions or may join both parties as defendants in the same lawsuit. *Id.* at 197.

■ Many of the principles enunciated in *Maddox* and *Vaca* have been applied to actions commenced by railroad employees pursuant to the provisions of the Railway Labor Act, 45 U.S.C. § 151 et seq. While it is true that a railroad employee generally must exhaust the administrative remedies set forth in the Act[2] and the labor contract before seeking a judicial determination of his grievance, see Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), there are exceptions. In Glover v. St. Louis—S. F. R. Co., 393 U.S. 324, 329–331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), the Supreme Court recognized three situations in which suit could be instituted by a railroad employee despite his failure to exhaust fully his contractual remedies: (1) when the employer repudiates the private grievance machinery; (2) if the union breaches its duty of fair representation; or (3) where the administrative remedies would be wholly futile. See also Griffin v. International U., United Automobile, A. & A. I. W., 469 F.2d 181, 183 (4 Cir. 1972); Nemitz v. Norfolk and Western Railway Company, 436 F. 2d 841, 849–850 (6 Cir. 1971).

Thus, construing the complaint and moving papers liberally, Czosek v. O'Mara, 397 U.S. 25, 27, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970), and accepting

---

2. 45 U.S.C. § 153 First (i) authorizes reference to the Adjustment Board of disputes "between an employee . . . and a carrier . . . growing out of grievances . . . ." Section 153 First (j) provides that "[p]arties may be heard either in person, by counsel, or by other representatives as they may respectively elect. . . ."

Schum's factual allegations as true, as we must, Gore v. Northeast Airlines, Inc., 373 F.2d 717, 726 (2 Cir. 1967), it seems clear that *Maddox, Vaca,* and *Glover* provide ample legal bases upon which Schum would have viable causes of action against both his union and his employer.

The appellee railroad, however, seeks to distingush these authorities on the ground that the *Vaca* exception to the exhaustion requirement applies only if the union has the sole power under the labor contract to activate the various steps in the grievance procedure. Schum, unlike the employee in *Vaca,* technically had the right to process the appeal on his own through the higher appellate stages of the grievance machinery,[3] but under the circumstances of this case we do not believe this distinction is sufficiently meaningful to justify the dismissal of the suit.

Schum was seeking to protect one of his most basic rights in the employee-employer relationship—the right not to be wrongfully discharged. As a general rule, grievances do not succeed without the full support of the union. Normally employees do not have the expertise, knowledge or experience to interpret the complicated substantive and procedural provisions of a collective bargaining agreement. In addition, specialized skill and insight are required at the higher levels of the grievance procedures to investigate and marshall the relevant facts and law, to prepare adequate petitions and briefs, to comply with the intricate limitations periods common to all labor contracts, and to present persuasive arguments to the board of arbitration.

■■ Here Schum properly invoked the union's power, aid and prestige to obtain the benefits of union representation in his protest against the wrongful discharge. Reassured on several occasions by union officials that his grievance would be processed administratively, Schum understandably left the matter in the hands of the union. He did not learn of the union's lack of diligence until months after he had lost the right to resort to the contractually-prescribed procedures on his own.[4] Under these circumstances, Schum cannot be denied his day in court against his employer because his union failed to provide him

---

3. In pertinent part, Rule 36 of the Labor Agreement states:
    (a) All claims or grievances must be presented in writing by or on behalf of the Employees involved to the officer designated by the Company as its highest officer to handle claims and grievances within 30 days from the date of the occurrence on which the claim or grievance is based. Should any such claim or grievance be disallowed, the Company shall, within 30 days from the date it is filed, notify the Employee or his representative of the reasons for such disallowance. If not so notified, the claim or grievance shall be considered valid and settled accordingly, but this shall not be considered as a precedent or waiver of the contentions of the Company as to other similar claims or grievances.
    (b) Decision by the highest officer designated by the Company to handle claims and grievances shall be final and binding unless within 30 days after written notice of his decision he is notified in writing that his decision is not accepted. All claims or grievances involved in a decision of the highest officer shall be barred unless within 6 months from the date of his decision proceedings are instituted by the Employee or his duly authorized representative before a tribunal having jurisdiction pursuant to law or agreement of the claim or grievance involved. It is understood, however, that the parties may by agreement in any particular case extend the 6 months' period herein referred to.
    *     *     *     *     *

4. The appellee railroad contends that certain admissions made by Schum in his deposition cast "substantial doubt" on his claims of reliance on the union and lack of knowledge of the applicable limitations period for appeal in the labor contract. However, these arguments founder on the well established rule that no genuine issues of fact may be resolved on a motion for summary judgment. Rule 56(c), F.R.Civ.P.; cf. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Suissa v. American Export Lines, Inc., 367 F.Supp. 1113, 1114 (S. D.N.Y.1973).

fair representation. As stated by the Supreme Court in *Vaca*:

> It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement. But the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrongful union conduct in the enforcement of such agreements. 386 U.S. 185–186.

We hold, therefore, that if Schum's allegations are correct, he made a good faith "attempt" to exhaust his contract remedies within the meaning of *Maddox*. Thus, if the district court finds on remand that Schum reasonably relied on his union to prosecute his grievance, the railroad's defense of nonexhaustion would not bar his wrongful discharge suit.[5]

The result reached here finds support in several leading authorities. In Retana v. Apartment, Motel, Hotel & El. Op. U., Loc. No. 14, 453 F.2d 1018 (9 Cir. 1972), the plaintiff repeatedly urged the union to protest her discharge. When the union refused, she sued her employer for wrongful discharge and the union for breach of its duty of fair representation. The district court ruled that *Maddox* barred the suit. The Ninth Circuit reversed, concluding that even if the plaintiff personally had the right to initiate her claim through the grievance machinery, nonexhaustion was excused by the union's failure to act "without rational justification" and by the union's failure "to advise [her] of her contract rights." *Id.* at 1027. Similarly, in Nemitz v. Norfolk and Western Railway Company, supra, where the plaintiffs unsuccessfully petitioned their union to prosecute their grievances administratively, the court held judicial intervention was proper because the plaintiffs had reached a "dead-end street" in their attempt to utilize contractual remedies. See also De Arroyo v. Sindicato De Trabajadores Packing, AFL–CIO, 425 F.2d 281, 283 (1 Cir. 1970) ("exhaustion of contract" barrier overcome by proof of the union's breach of its duty of fair representation or by "some other valid reason why the contractual remedies could be disregarded").

Reversed and remanded.

---

5. We do not read O'Mara v. Erie Lackawanna Railroad Company, 407 F.2d 674 (2 Cir. 1969), aff'd sub nom. Czosek v. O'Mara, 397 U.S. 25 (1970) to compel a contrary holding. There it appeared that the plaintiffs were fully cognizant of their right to proceed on their own through the grievance machinery and the union had refused to process their grievance. Moreover, there was no allegation that the union's breach of its duty of fair representation was the operative cause of the plaintiffs' failure to exhaust contractual remedies. These factual distinctions markedly distinguish *O'Mara* from the case at bar. Cf. Desrosiers v. American Cyanamid Company, 377 F.2d 864 (2 Cir. 1967) on remand, 299 F.Supp. 162 (D. Conn.1969).