Scott **MONTGOMERY**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION.**

**Civ. No. N-84-338 (PCD).**

United States District Court, D. Connecticut.

Oct. 16, 1985.

**1394**

James M.S. Ullman, Meriden, Conn., for plaintiff.

Harold R. Henderson, Jr., Joanna L. Moorhead, National R.R. Passenger Corp., Washington, D.C., for defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

The defendant, the National Railroad Passenger Corporation ("Amtrak"), moves for summary judgment on the ground that plaintiff failed to exhaust the grievance resolution procedures required by the Railway Labor Act, 45 U.S.C. § 153 First and Second ("RLA"), and because plaintiff's suit for wrongful discharge is time-barred by virtue of the holding in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 276 (1983).

*Facts*

The plaintiff, Scott Montgomery, worked as a Trackman at Amtrak's New Haven Rail Welding Plant. He was a member of the Brotherhood of Maintenance of Way Employees, which entered a collective bargaining agreement with Amtrak.

It is uncontested that on July 26, 1977 plaintiff fell asleep on duty while waiting for work to resume at a rail plant which had broken down. Plaintiff's supervisor, Mr. Smith, charged plaintiff with violating Amtrak's safety rules which prohibit sleeping on duty. Plaintiff was removed from service effective July 27, 1977, pending a formal hearing. Plaintiff alleges bad blood between himself and Smith, and that Smith had earlier vowed to "get my job" after plaintiff had complained to the union of dangerous working conditions. Affidavit of Scott Montgomery, December 10, 1984, at 2 ("Plaintiff's Affidavit").

On August 9, 1977, Amtrak conducted the formal hearing required by the collective bargaining agreement. On August 9, 1977, Amtrak notified plaintiff that he was to be permanently dismissed from service, effective immediately. Plaintiff appealed to his department head, who upheld the termination on November 3, 1977 after conducting another hearing.

At that point, plaintiff took his grievance to Amtrak's Labor Relations Department. A representative from the Department met with plaintiff's union representative, and concluded that plaintiff's discipline had been "excessive." Letter from S.H. Heltzinger, Director of Labor Relations, to Samuel Adamo, General Chairman, Brotherhood of Maintenance of Way Employees (June 6, 1978), Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, Exhibit 2. The Department restored plaintiff to active service as a Trackman "with seniority unimpaired[,] but without pay for time lost resulting from the incident." *Id.* Plaintiff

could have appealed the portion of the Department's ruling denying back pay to either the National Railroad Adjustment Board or a Public Law Board, as provided in the RLA[1] and his collective bargaining contract, but plaintiff claims (and defendant does not deny) that his union did not advise him of his right to do so.

Plaintiff went back to work for Amtrak on July 3, 1978. On December 29, 1978 he was furloughed along with thirty-three other Trackmen in what Amtrak characterizes as a "routine reduction-in-force," Affidavit of Elizabeth C. Jillson, Personnel Supervisor, Boston Division, but which plaintiff asserts was a "discriminatory and retaliatory" lay-off. Plaintiff's Affidavit at 2. Amtrak recalled plaintiff to service effective August 17, 1981,[2] but plaintiff notified the railroad that he was resigning to accept another job offer.

On May 3, 1984, plaintiff filed suit against Amtrak in Connecticut Superior Court seeking back pay for the period July 27, 1978 to July 3, 1979, and damages for the retaliatory layoffs. Defendant removed the case to federal court, and moved for summary judgment.

*Discussion*

The first issue is whether plaintiff's lawsuit should survive his failure to exhaust administrative remedies.

The RLA states that railroad employees "shall" pursue their grievances through the steps available within the company, and "may" thereafter bring them before the National Adjustment Board (or one of the regional Public Boards which arbitrate labor disputes). *See* note 1, *supra.* Although the Supreme Court originally held that employees who allege that they were wrongfully discharged had the *option* of going either to court or to the Board, *Moore v. Illinois Central R.R.,* 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941), the rule now is that resort to the grievance procedures established in the RLA is "mandatory." *Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (overruling *Moore* ). *See also Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam) ("Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts"); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) ("As a general rule in cases to which federal law applies, federal labor policy requires that individual employees must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress") (emphasis in original).

There are circumstances under which employees are excused from resort to the arbitration process. Plaintiff claims he is so exempt. If it would be "wholly futile" to go through arbitration, the law does not require employees to do so, *Glover v. St. Louis-S.F. Ry.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969), such as in the context of racial discrimination in which minority employees allege that the very same discrimination by their unions, or employers, or both, which is the basis of their law suits, justifies their fail-

---

**1.** 45 U.S.C. § 153 First (i):

> The disputes between an employee ... and a carrier ... growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board....

Congress has also created Special Boards of Adjustment (Public Law Boards) to adjudicate disputes otherwise referable to the National Railroad Adjustment Board. *See* 45 U.S.C. § 153 First (m).

**2.** Plaintiff was not out of work for the entire period from December 29, 1978 to August 17, 1981. Amtrak records show that he was recalled from furlough effective March 19, 1979, and that he worked from that date until January 18, 1980. He went on voluntary furlough from January 18, 1980 until March 24, 1980, and worked from March 24 to December 5, 1980. Plaintiff was furloughed again on December 4, 1980, recalled from furlough on December 22, 1980, and put on voluntary furlough from January 5, 1981 until the recall of August 17, 1981, which plaintiff declined.

ure to participate in arbitration procedures administered by those whom they charge with violating their rights. *Id.* at 330–31, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519; *Steele v. Louisville & Nashville R.R.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Plaintiff asserts that it would have been futile to protest the allegedly retaliatory furlough which followed his reinstatement by Amtrak because, "I had attempted to pursue my grievances through the arbitration process previously [by appealing the original wrongful discharge], but to no avail as it only made the situation worse." Plaintiff's Affidavit at 2. Although it is true that appealing his original dismissal had taken nearly a year to get his job back, it is not accurate to characterize a process which resulted in his reinstatement, albeit without back pay, as having been "to no avail," or as having made his situation "worse." Plaintiff should have taken his grievance to the head of his Department, and then, if unsuccessful there, to the Labor Relations Department—the same route he followed successfully in getting his job back. This court finds, therefore, that it has no subject matter jurisdiction over any claims related to the alleged retaliatory furloughs which occurred after plaintiff returned to service because plaintiff has not shown that resort to the appeal process, which is required by the RLA, would have been "futile" in the specific circumstances of this case.

Plaintiff has a more substantial reason for neglecting to appeal that portion of the Labor Relations Department's decision denying him back pay. Plaintiff claims that the union's failure to apprise him of his right to take his grievance to the next level of the arbitration process amounts to a breach of the union's duty of fair represen-

tation. Such a duty is implied from the grant to unions by section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a) of exclusive power to represent all employees in the collective bargaining unit. In *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), the Supreme Court held that a "wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." The Court declared that "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," *id.* at 191, 87 S.Ct. at 917, but concluded that there was no breach of the duty of fair representation where the union settled a claim, in good faith, at an intermediate stage in the appeals process, and refused the employee's request to go further. *See id.* at 193–95, 87 S.Ct. at 918–19. In the present case, the General Chairman of the Union wrote plaintiff that, "[u]nder the circumstances," the Labor Relations Department's proposal to return plaintiff to service, but without compensation for time lost, "seems to be a reasonable settlement." Letter from Samuel Adamo to Scott Montgomery (June 21, 1978), Plaintiff's Affidavit at 4. While it appears that here, as in *Sipes,* the union believed in good faith that the resolution of the grievance had been fair to plaintiff, the question still remains whether failure to inform plaintiff of his right to appeal further, constitutes a breach of the union's duty of fair representation sufficient to excuse him from failing to exhaust administrative remedies.[3]

---

**3.** In *Schum v. South Buffalo R.R.,* 496 F.2d 328 (2d Cir.1974), a railroad employee in a wrongful discharge action claimed that his union had failed to tell him, until it was too late, that pursuant to his collective bargaining contract he had only six months within which to appeal his grievance to the National Railroad Adjustment Board. The Court of Appeals reversed a lower court ruling which had dismissed the suit because of Schum's failure to take his case to the board. The Court of Appeals observed:

> Schum was seeking to protect one of his most basic rights in the employee/employer relationship—the right not to be wrongfully discharged. As a general rule, grievances do not succeed without the full support of the union. Normally employees do not have the expertise, knowledge or experience to interpret the complicated, substantive and procedural provisions of a collective bargaining agreement. In addition, specialized skill and insight are required at the higher levels of the grievance procedures to investigate and marshal the rel-

The court need not answer that question, however, because even were the court to find subject matter jurisdiction over this dispute, the law suit would still have to be dismissed as time-barred. Plaintiff contends that the appropriate statute of limitations in this case is the six-year period for breach of contract actions allowable under Connecticut state law. However, in *Del-Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that a six-month limitation period applies to "hybrid" suits brought by employees against their employers (for wrongful discharge) and their unions (for breach of the duty of fair representation). The Court concluded that a six-month limitation period struck the most appropriate balance between the need to provide an employee with a satisfactory opportunity to vindicate his collective bargaining and fair representation rights, and the need to resolve labor disputes promptly. *Id.* at 165–69, 103 S.Ct. at 2291–93. Plaintiff maintains that *Del-Costello* is not controlling here because that case should not be applied: (a) retroactively; (b) to the RLA; (c) to cases which never went as far as the Adjustment Board; and (d) to suits brought only against an employer.

The short answer to plaintiff's first two contentions is that the Second Circuit, *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2d Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), and this court, *Guertin v. Waterbury Printing & Graphic Communications Union*, Civil No. N–82–72 (PCD) (September 3, 1985), have specifically ruled that *DelCostello's* six-month limitation applies retroactively, and to cases brought pursuant to the RLA.

Plaintiff's third contention, which relies on a Massachusetts district court case[4] handed down prior to *DelCostello*, may also be disposed of summarily because the opinion in *DelCostello* explicitly rejected any distinction between cases going to final arbitration and those which are stopped short at various preliminary stages. "[I]f it were thought necessary to apply different [statutes of limitations] ... o these different possibilities, the result would be radical variation in the treatment of cases that are not significantly different." 462 U.S. at 166–67, n. 16, 103 S.Ct. at 2291 n. 16.

---

evant facts and law, to prepare adequate petitions and briefs, to comply with the intricate limitations periods common to all labor contracts, and to present persuasive arguments to the board of arbitration.
*Schum* relied, in part, on *Retana v. Apartment Motel*, 453 F.2d 1018, 1024 n. 10 (9th Cir.1972) ("Since the union can be sued for breach of its duty of fair representation if it fails to process a grievance, there is no apparent reason why it cannot be sued 'if it fails to advise the employees to file a grievance....' Feller, '*Vaca v. Sipes:* One Year Later,' in NYU Twenty-First Annual Conference on Labor 141, 144 (1969)"), and distinguished *O'Mara v. Lackawanna R.R.*, 407 F.2d 674 (2d Cir.1969), *aff'd sub nom. Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970), on the grounds that, in *O'Mara*, "[t]he plaintiffs were fully cognizant of their right to proceed on their own through the grievance machinery," and because, in *O'Mara*, "there was no allegation that the union's breach of its duty of fair representation was the operative cause of the plaintiff's failure to exhaust contractual remedies." *Schum*, 496 F.2d at 332, n. 5. Although *Schum* has been criticized by some courts—*see, e.g., Harrison v. United Transp. Union*, 530 F.2d 558 (4th Cir.1975) (per curiam),

*cert. denied,* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976); *Hill v. Southern Ry.*, 402 F.Supp. 414 (W.D.N.C.1975)—it is still the law of this circuit. In light of the factual similarities between the present case and *Schum*, the question whether the union breached its duty of fair representation by failing to advise Montgomery of his right to appeal to the National Railroad Adjustment Board, is substantial. *Cf. NLRB v. Local 282, International Brotherhood of Teamsters*, 740 F.2d 141, 147 (2d Cir.1984) ("the fiduciary duty which a union owes its members requires it to inform them of their obligations so that they may take whatever steps are necessary to protect their jobs").

4. *Hennebury v. Transport Workers Union*, 485 F.Supp. 1319 (D.Mass.1980). If resort to cases antedating *DelCostello* were necessary, this court would be bound not by *Hennebury* but by the Second Circuit decision in *Assad v. Mount Sinai Hosp.*, 703 F.2d 36, *vacated on other grounds*, 464 U.S. 806, 104 S.Ct. 54, 78 L.Ed.2d 73 (1983), which held that a six-month limitation period applied to all wrongful discharge/breach of fair representation actions which stopped short of final arbitration.

Plaintiff's last argument to get out from under a six-month limitation period is that *DelCostello* applies only to "hybrid" claims against *both* a union and an employer, and not to cases like this one brought only against an employer. For authority, plaintiff relies, primarily, on *O'Hare v. General Marine Transport Corp.*, 578 F.Supp. 72, 73 (S.D.N.Y.1983), *aff'd*, 740 F.2d 160 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). *O'Hare* does stand for the proposition that wrongful discharge cases, based solely on an employer's violation of the collective bargaining contract, should be governed by the applicable state statute of limitations for contract actions, which, in New York, as in Connecticut, is six years. *Contra, Voda v. New England T & T*, 580 F.Supp. 852, 854 (D.Mass.1984); *Harpp v. GE*, 571 F.Supp. 426 (N.D.N.Y.1983); *Fiske v. Lockheed Georgia Co.*, 568 F.Supp. 590, 595 (N.D.Ga.1983). However, plaintiff cannot assert (without appearing to want to have his cake and eat it too) that because of union malfeasance he has no duty to exhaust administrative remedies, and then cite cases which involve no allegations of union wrongdoing for his statute of limitations argument. As is implied in the following excerpt from *Vaca v. Sipes,* what makes a case a "hybrid" action against both union and employer is the nature of the *claim,* not the identity of the *parties:*

> [W]e think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's griev-

ance.... And if, to facilitate his case, the employee joins the union as a defendant, the situation is not substantially changed.... And, insofar as adjudication of the union's breach of duty is concerned, the result should be no different if the employee ... sues the employer and the union in separate actions.

386 U.S. at 186–87, 87 S.Ct. at 914–15 (citations omitted). As the Court said, more succinctly, in *DelCostello,* "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." 462 U.S. at 165, 103 S.Ct. at 2291.

Thus, plaintiff cannot circumvent the six-month time limitation mandated by *DelCostello* simply by not naming the union as a defendant[5] when this court would lack subject matter jurisdiction were it not for the allegations of union malfeasance which plaintiff correctly makes central to his complaint. Were plaintiff actually to succeed in characterizing this dispute as only against his employer, then summary judgment would issue for the defendant because of plaintiff's failure to follow to completion the mandatory procedures required by the RLA.

Mr. Montgomery, in his affidavit, indicates that he believed himself to be victim of injustice from the moment Amtrak's Labor Relations Department handed down its decision refusing to award back pay: "[They] said my punishment was too severe and excessive and that is why I felt I had a right to pursue back pay *and have done so.*" Plaintiff's Affidavit at 2 (emphasis added). If Mr. Montgomery had the right

---

5. Amtrak argues that plaintiff's failure to join the union as a defendant in this case is an additional ground for granting summary judgment. Defendant's Reply Memorandum at 2, 6–7. *See Riddle v. Transworld Airlines,* 512 F.Supp. 75, 80 n. 5 (W.D.Mo.1981) ("If ... the court's power to grant an employee relief against his employer in a RLA case is ancillary to its power to grant the employee relief against his union for breaching its duty of fair representation, then clearly, the union must be a party to the action in order for the court to grant any relief at all.") *See also, Mavis v. Brotherhood of Railway, Airline & Steamship Clerks,* 585 F.2d 926 (8th Cir.1978); *Ramey v. Chesapeake & Ohio Ry.,* No. 81–3288 (S.D.W.Va. Aug. 29, 1983). This court's reading of the excerpts from *Vaca v. Sipes* and *DelCostello* just quoted in the text would permit an employee to elect to sue only his employer·though including in the complaint allegations that the union breached its duty of fair representation. This is another question, however, which the court need not actually *decide in light of its* ruling on the applicable statute of limitations.

to pursue back pay in the courts without first exhausting administrative procedures, he should have done so long before he brought this action. Even were he to be excused from failing to exhaust mandatory grievance procedures, he offers no basis for being, and thus cannot be, excused from failing to file a timely law suit. Therefore, defendant's motion for summary judgment is granted.

Defendant's request for an award of attorney's fees will be denied. Defendant's motion to dismiss the case for plaintiff's failure to post bond to cover costs is now moot in light of this ruling.

SO ORDERED.