**John RADZIKOWSKI, Plaintiff,**

v.

**DELAWARE & HUDSON CORP. and Brotherhood of Maintenance of Way Employees, Defendants.**

**No. 92–CV–695A(H).**

United States District Court, W.D. New York.

Oct. 17, 1994.

---

**482**

Phillip A. Thielman, Buffalo, NY, for plaintiff.

Timothy G. Mulcahy, Clifton Park, NY, William E. Grande, Law Offices of E. Joseph Giroux, Jr., Buffalo, NY, William A. Bon, General Counsel, BMWE, Southfield, MI, for defendants.

## DECISION AND ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Heckman, pursuant to 28 U.S.C. § 636(b)(1), on December 16, 1993. On November 1, 1993, defendants filed separate motions for summary judgment. On June 1, 1994, Magistrate Judge Heckman filed a Report and Recommendation recommending (1) granting defendants' motions for summary judgment; and (2) dismissing the complaint for lack of subject matter jurisdiction due to plaintiff's failure to exhaust his administrative remedies under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (1986), and his failure to exhaust the grievance procedures available under the collective bargaining agreement.

On June 24, 1994, plaintiff filed objections to Magistrate Judge Heckman's Report and Recommendation. Defendants each filed responses to plaintiff's objections on July 25, 1994.[1]

Pursuant to 28 U.S.C. § 636(b)(1), the Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation and of the record in this case, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, the Court grants defendants' motions for summary judgment and dismisses the complaint for lack of subject matter jurisdiction.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

Filed June 1, 1994.

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned by Hon. Richard J. Arcara pursuant to 28

---

1. On July 19, 1994, this Court filed an Order extending the time for defendants to file a response to plaintiff's objections until July 26, 1994.

U.S.C § 636(b)(1) for all pretrial and dispositive matters. Defendants have filed motions for summary judgment. For the following reasons, it is recommended that the defendants' motions be granted.

### BACKGROUND

On July 11, 1974, plaintiff began his employment for the Delaware & Hudson Railway Company ("Delaware & Hudson") as a trackman on the "Second" or "Susquehanna" subdivision. This subdivision comprised an area of the railroad which ran from Schenectady, New York to Binghamton, New York. At the time of his employment, plaintiff became a member of the Brotherhood of Maintenance of Way Employees ("BMWE"), and remains a member in good standing. He became an assistant foreman in the Susquehanna subdivision on August 18, 1975, and a foreman on May 10, 1976.

In March, 1983, Delaware & Hudson leased the former Erie Railroad yard at Buffalo, New York, referred to as the "SK Yard," in order to establish a switching, classification and emergency maintenance location in western New York State. At that time, plaintiff was offered a position as foreman at the SK Yard. Plaintiff signed a letter agreement dated March 10, 1983, between the railroad and BMWE,[1] which stated in relevant part as follows:

> It is the intent of this agreement that anyone desiring to bid any of the positions available at SK Yard, except system equipment operators, will retain their rights on their respective divisions which they currently are on and will also establish rights on the new roster as of the date they first work the position.

(Item 14, Ex. 7). Plaintiff moved his family to Buffalo and began working at the SK Yard on April 7, 1983.

On June 20, 1988, Delaware & Hudson filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. In June, 1990, defendant Delaware & Hudson Corp. ("DHC"), a subsidiary of Canadian Pacific Limited ("CP Rail"), acquired the assets

of Delaware & Hudson (*see* Item 14, Ex. 5). Plaintiff continued to work at the SK Yard throughout the bankruptcy period.

Prior to acquiring the assets of Delaware & Hudson, DHC negotiated new collective bargaining agreements with the unions representing Delaware & Hudson employees, including BMWE. The majority of the BMWE membership employed by DHC, including plaintiff, voted to approve the agreement (Item 14, Ex. 12). The agreement became effective on August 23, 1990 (Item 14, Ex. 14, p. 122).

By letter dated August 16, 1990, the BMWE membership was notified that the new collective bargaining agreement had been ratified. That letter also notified the membership that the following procedures would be implemented to address seniority rosters, which had been frozen since the bankruptcy filing in June, 1988:

> August 16, 1990—All active and furloughed members will be notified of where Rosters are posted. Roster protests must be postmarked by August 31, 1990.
>
> September 7, 1990—Roster protest meeting.
>
> September 14, 1990—Revised 1990 posted.
>
> September 17, 1990—All jobs will be put up for Bid.
>
> October 4, 1990—Jobs will be awarded.
>
> October 8, 1990—New jobs will start.

(Item 23, Ex. G).

The seniority roster for the Buffalo Track Forces, revised as of September 10, 1990, ranked plaintiff first in the trackman, assistant foreman and foreman classifications, with an entry date of April 7, 1983. The seniority roster for the Susquehanna subdivision, also revised as of September 10, 1990, ranked plaintiff 24th in the trackman classification with an entry date of July 11, 1974, 15th in the assistant foreman classification with an entry date of August 18, 1975, and 9th in the foreman classification, with an entry date of May 10, 1976 (Item 23, Ex. H). Seniority rosters posted January 1, 1991 also

---

1. None of the parties have been able to produce a copy of the letter agreement executed by a representative of BMWE.

listed plaintiff on both the Buffalo and Susquehanna rosters, with the same rankings (Item 23, Ex. I).

In June, 1991, plaintiff accepted a temporary position as supervisor on the Champlain subdivision, which covers the area from Whitehall, New York to Rouses Point, New York, along the border of the United States and Canada. This position was abolished in September, 1991, and plaintiff returned to his foreman position at the SK Yard in Buffalo. Between June and September, 1991, plaintiff continued to pay his BMWE dues.

Meanwhile, on August 26, 1991, a roster meeting was held in Clifton Park, New York. At that meeting, BMWE members John Harvey and David Jordan submitted written protests against the 1991 seniority rosters. John Harvey's protest, dated February 28, 1991, stated as follows:

I would like to protest the 1991 2nd-sub roster.

John Radzikowski # 24 did not work as a foreman or trackman in the 2nd-sub. after Oct. 8, 1990. During the same period he worked as a foreman in the Buffalo division.

He should have had to choose between rosters. Any agreement he had in 1983 should be null and void with the new contract and the sale of the company.

(Item 14, Ex. 15). David Jordan's protest, dated March 27, 1991, stated:

I wish to protest John Radzikowski appearing on the 1991 2nd sub-division track roster. Mr. Radzikowski failed to bid any position in the 2nd sub.

(*Id.*).

By letter dated September 19, 1991, DHC notified plaintiff that he had thirty days to select which subdivision roster he wished to remain on (Item 14, Ex. 17). Plaintiff did not respond to this letter. A subsequent letter from DHC dated October 24, 1991 advised plaintiff to respond "promptly" to the September 19, 1991 letter (Item 14, Ex. 18). Again, plaintiff did not respond.

However, in August and September of 1991, plaintiff spoke with BMWE representative John Davison about his listing on the two seniority rosters. During those conversations, plaintiff told Davison that he did not believe he had to choose between rosters because his seniority rights on the Susquehanna subdivision had been "frozen" by the March, 1983 agreement with Delaware & Hudson (Item 19, Radzikowski Deposition, pp. 17–19). Plaintiff also told Davison that he intended to "fight it legally ..." (*id.*).

By letter dated November 19, 1991, plaintiff's counsel wrote to Davison:

Please be advised that this office represents [plaintiff] relative to a determination of his employment rights.

[Plaintiff] has been notified that he must choose between one of two rosters upon which he is presently listed and wishes to know the underlying justification for requiring him to choose between the two (2) rosters. Accordingly, please advise the undersigned at your earliest convenience as to the section of the collective bargaining agreement, or the statute(s), rule(s) and/or regulation(s) which require [plaintiff] to choose between the two (2) rosters.

(Item 19, Ex. C). Davison responded by letter dated December 12, 1991. He forwarded seven pages containing "relative sections" of the 1990 collective bargaining agreement, and stated as follows:

For your information, I discussed this situation in depth with [plaintiff], and although he did not agree with my explanation, he never stated he did not understand the relative rules regarding this matter. Also, in our conversation, I advised [plaintiff] that he had the right to initiate a claim or grievance under the procedure set forth in Rule 24. To date, I have not received any correspondence from [plaintiff] as advised.

(Item 19, Ex. D).

Revised seniority rosters were posted in January, 1992. Plaintiff was not listed on the Susquehanna subdivision roster (Item 23, Ex. J). On January 30, 1992, plaintiff's counsel filed a notice of grievance on behalf of plaintiff against DHC "and possibly, the BMWE itself ..." (Item 19, Ex. F). The notice claimed violations of Rules 4.9 through 4.12, and Rule 8.1, of the collective bargaining agreement, with a violation date of January 22, 1992. The notice also claimed that

the violations were "continuing" (Item 19, Ex. G).

By letter dated March 27, 1992 from J.J. Parola, DHC's Chief Engineer, plaintiff's counsel was advised that plaintiff's grievance had been denied for failure to comply with Rule 24.1 of the collective bargaining agreement. Rule 24.1 requires presentation of a claim or grievance within sixty days of the events giving rise to the claim (Item 14, Ex. 13, p. 34). The letter stated that since plaintiff's name was removed from the Susquehanna subdivision roster "on or about October 19, 1991," he would have had to file his grievance by December 19, 1991. The letter also stated that "[n]othing in the Collective Agreement allows an employee to maintain seniority on two rosters. Any rights [plaintiff] may have had under any prior collective agreements are no longer in effect" (Item 19, Ex. H).

On May 18, 1992, plaintiff appealed the denial of his grievance (Item 19, Exs. I, J). On June 18, 1992, the appeal was denied by Thomas F. Waver, DHC's General Manager of Operations & Maintenance (Item 19, Ex. K). Plaintiff took no further steps to pursue his grievance.

On October 20, 1992, plaintiff filed this action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, against DHC for "unlawful and discriminatory deprivation of employment" and against BMWE for breach of its duty of fair representation (Item 1, ¶ 1). On March 29, 1993, plaintiff filed an amended complaint which deleted the allegation of jurisdiction under LMRA § 301 but remained unchanged in all other respects (Item 9).

Defendants move for summary judgment on the grounds that plaintiff has failed to demonstrate breach of the collective bargaining agreement by DHC or breach of the duty of fair representation by BMWE. Defendants also move to dismiss the complaint as time-barred by the six-month statute of limitations applicable to "hybrid" breach of contract/breach of duty of fair representation claims. Finally, defendants move to dismiss based on plaintiff's failure to exhaust either his internal union remedies or the adminis-

trative remedies available to him under the Railway Labor Act.

## *DISCUSSION*

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. Ann Taylor, Inc.,* 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. Ann Taylor, Inc., supra,* 933 F.2d at 167.

## II. Exhaustion of Remedies Under the Railway Labor Act.

Plaintiff's claim against DHC arises under the Railway Labor Act. That Act is designed to resolve minor disputes between railroad employees and their employers through arbitration. *See* 45 U.S.C. § 153 First(i); *Crusos v. United Transportation Union, Local 1201*, 786 F.2d 970, 971–72 (9th Cir.), *cert. denied*, 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986). § 153 First(i) provides:

> The disputes between an employee ... and a carrier ... growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the [National Railroad] Adjustment Board ["NRAB"] with a full statement of the facts and all supporting data bearing upon the disputes.

▉ A dispute between a railroad and an employee over the meaning of the provisions of the collective bargaining agreement dealing with seniority rights is a "minor dispute" within the exclusive jurisdiction of the NRAB. *See, e.g., Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188, 1190–91 (3d Cir.1984). Such disputes are subject to compulsory and binding arbitration before the NRAB (or before an adjustment board established by the employer and the union representing the employees), and the board's jurisdiction to resolve them is primary and exclusive. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 303–04, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989); *Railway Labor Executives' Association v. Chesapeake Western Railway*, 738 F.Supp. 1544, 1550 (E.D.Va.), *aff'd in relevant part*, 915 F.2d 116 (4th Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991). Ordinarily, therefore, the federal district court would not have subject matter·jurisdiction to consider seniority rights claims by an employee against an employer subject to the Railway Labor Act, like the claims made by plaintiff here. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972); *Trial v. Atchison, Topeka & Santa Fe Railway Co.*, 896 F.2d 120, 123 (5th Cir.1990).

An exception to the exclusive jurisdiction of the NRAB exists when the employee has not only a dispute with the employer involving interpretation of the collective bargaining agreement, but also a claim against the union for breach of the duty of fair representation. *Glover v. St. Louis–San Francisco Railway Co.*, 393 U.S. 324, 328–29, 89 S.Ct. 548, 550–51, 21 L.Ed.2d 519 (1969); *Trial v. Atchison, Topeka & Santa Fe, supra; Fechtelkotter v. Air Line Pilots Ass'n*, 693 F.2d 899, 903 (9th Cir.1982). This is because the Railway Labor Act does not provide the NRAB with jurisdiction over employee-union disputes. *See Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Richins v. Southern Pacific Co.*, 620 F.2d 761, 762–63 (10th Cir.1980), *cert. denied sub nom. Brotherhood of Railway Carmen of U.S. & Canada v. Richins*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 838 (1981). Here, plaintiff claims that the union refused to support him in his attempt to maintain his standing on the Susquehanna subdivision seniority roster (Item 9, ¶¶ 14–15). He also claims that one of his union representatives, David Jordan, stood to benefit directly from plaintiff's removal from the Susquehanna roster and in fact filed one of the written protests against him.

▉ However, a railroad employee cannot circumvent the exhaustion of administrative remedies requirement of the Railway Labor Act simply by alleging breach of the duty of fair representation on the part of the union. *Andrews v. Louisville & Nashville, supra; Rader v. United Transportation Union*, 718 F.2d 1012, 1014 (11th Cir.1983). The *Rader* case holds that the Supreme Court's decision in *Andrews* requires an exhaustion of the remedies provided by the Railway Labor Act prior to bringing a federal court action against the railroad for breach of the collective bargaining agreement and against the union for breach of its duty of fair representation, *"without exception...."* *Rader v.*

*United Transportation Union, supra* (emphasis added).

*Rader* involved a railroad employee's claim for reinstatement of seniority rights, similar to plaintiff's claim here. The employee had filed a grievance with the company, but did not pursue the grievance any further after the union refused to support his claim. Instead, he filed an action in federal court against the railroad for breach of the collective bargaining agreement and against the union for breach of the duty of fair representation. He claimed that the union's refusal to pursue his grievance was evidence that the union and the railroad had conspired to deprive him of his seniority rights.

The Eleventh Circuit found this claim insufficient to excuse the employee's failure to exhaust the administrative remedies provided in the Railway Labor Act since that statute "allows an employee to process a claim to the National Railway Adjustment Board without the concurrence of the Union...." *Rader v. United Transportation Union, supra;* 45 U.S.C. § 153, First (i) and (j). Thus, the employee's failure to pursue his grievance against the company without the union's help, combined with his failure to exhaust internal union remedies as required by *Clayton v. United Automobile, Aerospace, and Agricultural Implement Workers,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), was fatal to his federal court action.

Similarly, in *Oliver v. Local No. 1261 United Transportation Union–Enginemen & Southern Railway Co.,* 587 F.Supp. 3 (N.D.Ga.1984), a railroad employee sought to regain seniority rights which he voluntarily relinquished upon transfer to a new division. The union filed a grievance on his behalf. When the grievance was denied by the railroad, the union filed an appeal. After denial of the appeal, the union refused to pursue the grievance any further.

Instead of appealing the grievance himself, or appealing the union's decision not to take the grievance to arbitration, the employee sued the union and the railroad in federal court for breach of the duty of fair representation and breach of the collective bargaining agreement. The district court found that the employee's failure to pursue his remedies against the company before the NRAB, combined with his failure to pursue internal union remedies, barred his federal court action against the railroad and the union. *Id.* at 4–6.

The Second Circuit does not interpret the requirements of the Railway Labor Act, or the holding in *Andrews,* as restrictively as the Eleventh Circuit did in *Rader.* For example, in *Schum v. South Buffalo Railway Co.,* 496 F.2d 328 (2d Cir.1974), the court recognized the following situations in which a federal court action could be brought by a railroad employee despite failure to exhaust collective bargaining or Railway Labor Act remedies: (1) when the employer repudiates the private grievance machinery, (2) if the union breaches its duty of fair representation, (3) where the administrative remedies would be wholly futile, and (4) where the union's actions prevent the employee from bringing his or her claim before the NRAB. *Id.* at 330–32; *see also Childs v. Pennsylvania Federation Brotherhood of Maintenance Way Employees,* 831 F.2d 429 (3rd Cir.1987) (adopting *Shum's* recognition of fourth exception to exhaustion requirement).

■ In this case, there is no indication that the railroad wrongfully repudiated the grievance process. The railroad denied plaintiff's grievance as untimely filed, and also found nothing in the collective bargaining agreement allowing an employee to maintain seniority on two subdivision rosters. When this denial was upheld on appeal, it was plaintiff who repudiated the process by failing to seek arbitration before the NRAB. Plaintiff contends that to do so would have been futile because the NRAB is made up of railroad and union officials hostile to his seniority claim. However, as the railroad points out, the membership of the NRAB is selected by all carriers (not just DHC) and all unions (not just BMWE). *See* 45 U.S.C. § 153 First (a), (h). Plaintiff has failed to show that the current membership of the NRAB contains only members selected by DHC and BMWE, or how the NRAB members might otherwise be hostile to him.

■ Plaintiff has also failed to show how the union breached its duty of fair represen-

tation. In order to prove a breach of the duty of fair representation, the employee must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Haerum v. Air Line Pilots Ass'n*, 892 F.2d 216, 221 (2d Cir.1989). Plaintiff complains that the union refused to process his grievance, "and was in fact supportive of the company position" relative to his claim (Item 9, ¶ 14). However, while it "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," *Vaca v. Sipes, supra*, 386 U.S. at 191, 87 S.Ct. at 917, the union is under no obligation to process a grievance it determines to be meritless. *Id.*

Plaintiff also complains that one of his union representatives benefitted by plaintiff's removal from the Susquehanna subdivision roster. Even if this is true, it does not establish a breach of the duty of fair representation. As the Second Circuit held in *Haerum v. Air Line Pilots, supra:*

> The duty of fair representation does not require that a union achieve absolute equality among its members. Rather, because a union by necessity must differentiate among its members in a variety of contexts, *see Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 [73 S.Ct. 681, 686, 97 L.Ed. 1048] (1953), a showing that union action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation.

892 F.2d at 221.

■ A further reason why plaintiff's breach of the duty of fair representation claim must fail is that plaintiff did not attempt to pursue internal union remedies to challenge the union's refusal to process his grievance against the railroad. The court has discretion to excuse an employee's failure to exhaust internal union remedies prior to bringing a fair representation suit where the employee has shown that (1) union officials are so hostile to the employee that he or she could not hope to obtain a fair hearing on his or her claim, (2) internal union appeal procedures would be inadequate either to reactivate the employee's grievance or to award him or her the full relief sought, and (3)

exhaustion of internal union procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Clayton v. United Automobile, Aerospace and Agricultural Implement Workers, supra*, 451 U.S. at 689, 101 S.Ct. at 2095. Plaintiff has failed to convince the court that any of these exceptions to the exhaustion requirement apply to the facts of his case.

Plaintiff has also failed to show that presentation of his claim to the NRAB would be wholly futile. The court has already rejected plaintiff's futility argument based on his assertion that the NRAB is made up entirely of railroad and union officials hostile to his claim for reinstatement of seniority rights.

■ Finally, plaintiff has not shown how the union's actions in any way prevented him from bringing his claim before the NRAB.

Under Rule 24.5 of the collective bargaining agreement, plaintiff had nine months from the denial of his appeal on June 18, 1992 to institute proceedings before the NRAB (Item 14, Ex. 13, p. 34). By that time, plaintiff had obtained legal counsel. In fact, counsel was retained in November, 1991, and was involved in the grievance process throughout. Despite this, plaintiff failed to present his claim to the NRAB, as he was required to do under the Railway Labor Act and the collective bargaining agreement.

Accordingly, since none of the recognized exceptions to the exhaustion requirement are applicable here, this court has no subject matter jurisdiction over plaintiff's claims against DHC for breach of the collective bargaining agreement or against BMWE for breach of the duty of fair representation.

Defendants also maintain that this action should be dismissed because it was not commenced within the six-month limitations period. Defendants contend that the six months began to run in August, 1991, when plaintiff knew or should have known that the union would not process his grievance, or at the latest in January, 1992, when the revised Susquehanna subdivision seniority roster was posted. However, the issue of timeliness need not be reached if plaintiff had no right

at all to sue. *Wozniak v. U.A.W., Local 897*, 842 F.2d 633, 635 (2d Cir.1988).

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (Items 14 & 17) should be granted, and the case should be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

The district court will ordinarily refuse to consider on *de novo review* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the plaintiff and the defendants.

**SO ORDERED.**

DATED:   Buffalo, New York

May 31, 1994