**Robert T. SISCO, Appellant,**

v.

**CONSOLIDATED RAIL CORP. and United Transportation Union.**

**No. 83–5631.**

United States Court of Appeals, Third Circuit.

Argued April 2, 1984.

Decided April 24, 1984.

George M. Schroeck (Argued), Erie, Pa., for appellant.

Norton N. Newborn, Norton N. Newborn Co., L.P.A., Cleveland, Ohio, for appellee, United Transp. Union.

Jeffrey H. Burton (Argued), Dennis Alan Arouca, Philadelphia, Pa., Robb M. Jones, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for appellee, Consol. Rail Corp.

Before GIBBONS and SLOVITER, Circuit Judges, and BISSELL, District Judge.[*]

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This appeal requires that we determine whether a uniform federal statute of limitations applies to claims alleging a breach of the duty of fair representation ("DFR") by a union for failure to bring a grievance to the National Railroad Adjustment Board under the Railway Labor Act, 45 U.S.C. §§ 151–188 (1976). If a federal limitation period applies, we must decide what that period shall be. The issue appears to be one of first impression in the courts of appeals since the Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), holding that a uniform six-month limitation period applies to DFR claims under the National Labor Relations Act.

### I.

■ Appellant Robert Sisco was employed by the Renova Division of the Pennsylvania Railroad Co. between 1956 and 1957, during which time, he alleges, he acquired seniority rights under a collective bargaining agreement with a predecessor of the United Transportation Union ("UTU"). In 1963 Sisco resumed work with the Railroad's Buffalo Division, where he worked until January of 1971, when the company laid him off. On January 26, 1971, the Penn Central Transportation Co., successor to Pennsylvania Railroad, recalled Sisco to service in Buffalo. Sisco declined to return to Buffalo, and on February 8, 1971, executed a letter purporting to forfeit his seniority with the Buffalo Division and to claim seniority with the

---

[*] Hon. John W. Bissell, United States District Judge for the District of New Jersey, sitting by designation.

Renova Division. On March 4, 1971, Penn Central asserted that by declining to return to Buffalo, Sisco forfeited all seniority rights, and terminated his employment. Penn Central and UTU exchanged further correspondence later in March of 1971 reasserting their opposing positions on the forfeiture of Sisco's seniority rights.

On March 9, 1971, UTU protested Sisco's dismissal. Thereafter, neither Sisco nor UTU took any action on the grievance until June of 1980, when Sisco renewed his claim for seniority accumulated with Renova. Penn Central's successor, the Consolidated Rail Corp. ("Conrail"), responded, as Penn Central had in 1971, that Sisco had forfeited his seniority by refusing to return to Buffalo. There the matter rested until November of 1980, when UTU requested that Conrail restore Sisco's Renova Division seniority. On February 5, 1981, Conrail notified UTU that Sisco's case had been discussed at a "System Monthly Meeting" in January, and that its position remained unchanged. Although UTU responded in March of 1981 that Conrail's position was "unacceptable" and that it anticipated "presenting this case for further handling to a higher tribunal," the union never did so. In particular, UTU did not submit the dispute for adjudication by the National Railroad Adjustment Board ("NRAB" or "the Board").

On May 19, 1983, Sisco sued Conrail and UTU seeking a declaration of his right to seniority with Renova. Although the basis for Sisco's cause of action against UTU as set forth in the complaint is somewhat opaque, we read it as predicated on a breach of the duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1975). Both UTU and Conrail moved to dismiss on the ground that the action was barred by Sisco's failure to exhaust administrative remedies and on statute-of-limitations grounds. Without deciding on the appropriate limitation period, the district court dismissed the action against both defendants on July 29, 1983, for failure to comply with "the applicable statute of limitations." Sisco now appeals.

## II.

Sisco's claim against Conrail gives us little pause. This action arises out of the interpretation and application of the collective bargaining agreement between Conrail and UTU. Such actions are termed "minor disputes." *Elgin, Joliet & E. Ry. v. Burley,* 325 U.S. 711, 722–24, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945). Section 3 of the Railway Labor Act ("RLA"), 45 U.S.C. § 153 First (i) (1976), provides for administrative procedures for the adjudication of minor disputes, including their submission to an appropriate division of the NRAB. The Supreme Court has held that exhaustion of these procedures is generally required under the Act. *Andrews v. Louisville & N.R.R.,* 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972). Three exceptions to the exhaustion requirement in actions against employers calling for the resolution of minor disputes have been recognized: (1) when the employer repudiates the private grievance machinery; (2) when resort to administrative remedies would be futile; and (3) when the employer is joined in a DFR claim against the union. *See Czosek v. O'Mara,* 397 U.S. 25, 29–30, 90 S.Ct. 770, 773–774, 25 L.Ed.2d 21 (1970); *Glover v. St. Louis-S.F. Ry,* 393 U.S. 324, 329–31, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969); *Goclowski v. Penn Central Transp. Co.,* 571 F.2d 747, 758–60 (3d Cir. 1977); *Schum v. South Buffalo Ry,* 496 F.2d 328, 330 (2d Cir.1974). No allegations are made that Conrail repudiated the private grievance machinery or that resort to administrative remedies would be futile. Neither of the first two exceptions therefore applies. In addressing the third exception, the Supreme Court has held that an employer may be joined in a DFR action against the union if facts are alleged tying the employer to the events complained of. The Court has left open the question whether the employer may also be joined if no such facts are alleged but the presence of the employer is necessary for complete

relief. *Czosek*, 397 U.S. at 30, 90 S.Ct. at 774. No facts are alleged tying Conrail to UTU's failure to process Sisco's grievance. Moreover, no allegation is made in this declaratory judgment action that Conrail's presence is necessary for complete relief. Thus, the only plausible claim against Conrail is a minor dispute, over which the NRAB has exclusive jurisdiction.[1] *See Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam); *Andrews v. Louisville & N.R.R.*, 406 U.S. 320, 321–26, 92 S.Ct. 1562, 1563–66, 32 L.Ed.2d 95 (1972); *Gunther v. San Diego & A.E. Ry*, 382 U.S. 257, 265, 86 S.Ct. 368, 372, 15 L.Ed.2d 308 (1965). Accordingly, the district court lacked subject matter jurisdiction over Sisco's claim against Conrail.

■ The claim against UTU invites more lengthy consideration. Any failure to exhaust administrative remedies would not bar a duty-of-fair-representation claim against the union. *DelCostello*, 103 S.Ct. at 2290; *Hines*, 424 U.S. at 567, 96 S.Ct. at 1057; *Czosek*, 397 U.S. at 27–28, 90 S.Ct. at 772–773; *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914. We must therefore decide whether the claim is barred by the applicable statute of limitations. Sisco maintains that his grievance was not finally rejected until March 26, 1981, when UTU notified Conrail that its decision was "unacceptable." Moreover, Sisco argues, because the applicable limitation period in this case is the six-year Pennsylvania statute of limitation governing actions on a contract, the action is not time-barred. Conrail and UTU dispute the applicability of the Pennsylvania statute, maintaining that the six-month limitation period applicable under the National Labor Relations Act, 29 U.S.C. § 160(b) (1976), applies. Alternatively, Conrail argues, the two-year limitation period for enforcement of NRAB awards in section 3 of the RLA, 45 U.S.C. § 153 First

(r) (1976), governs. Under either limitation period, the action would be time-barred even if it did not accrue until March of 1981.

Although Sisco's cause of action arguably accrued in 1971, and may therefore be barred by any applicable limitation period, we read the complaint on this motion to dismiss in the light most favorable to Sisco. Therefore, we assume *arguendo* that the cause of action did not accrue until March of 1981, and reach the question whether the Pennsylvania limitation period or an appropriate federal period governs.

A.

■ The Supreme Court first established the duty of fair representation in an action under the Railway Labor Act. In *Steele v. Louisville & N.R.R.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), the Court held that a labor organization breached an implied duty under the Act to bargain fairly on behalf of minority union members by negotiating a contract that excluded them from certain positions. *Id.* at 202–03, 65 S.Ct. at 232. The Court reasoned that the RLA authorized employees to act only through their collective bargaining agent, and excluded minority members from seeking alternative representation. *Id.* at 199–200, 65 S.Ct. at 230–231. If minority members were not to be deprived of effective representation altogether, the union must have a duty to represent the interests of all members without hostility or discrimination. Because the Act provided no administrative means for resolving disputes between employees and their own union, the Court concluded, such actions could be brought in the courts. *Id.* at 205–07, 65 S.Ct. at 233–34.

The Supreme Court later extended these principles to cases governed by the National Labor Relations Act ("NLRA"). *See*

1. The Sixth Circuit recently held that a fourth exception to the exhaustion requirement for minor disputes applies in actions against the employer: when as a result of a breach of the duty of fair representation by the union, the employee has lost the right to press a grievance before the NRAB. *Kaschak v. Consolidated Rail Corp.*, 707 F.2d 902, 905–12 (6th Cir.1983). No allegations are made that Sisco lost the right to process his grievance before the NRAB. We therefore do not reach the question whether the *Kaschak* exception would be appropriate.

*Syres v. Oil Workers International Union,* 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955) (per curiam); *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Most recently, in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the court characterized the source of the duty of fair representation under the NLRA as identical to that under the RLA. Both acts

> allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization "to serve the interests of all members without hostility or discrimination toward any."

*Id.* at 2290 n. 14 (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 903 (1967)).

*DelCostello* also held that DFR claims under the NLRA are to be governed by a uniform federal limitation period. "State legislatures," the Court noted, " 'do not devise their limitations periods with national interests in mind....' " *Id.* 103 S.Ct. at 2289 (quoting *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977)). In *DelCostello,* the Court deemed a state limitations period for DFR claims unsuitable for three reasons. First, in order to recover the full measure of damages, an employee bringing a DFR claim under the NLRA would, in practice, be obliged to bring suit within the time allotted to sue the employer.[2] The appropriate limitation period for such actions, the Court reasoned, should be governed by a uniform federal statute.[3] Second, lengthy state limitation periods applicable in most cases [4] would frustrate "the relatively rapid resolution of labor disputes favored by federal law." 103 S.Ct. at 2292. Finally, an analogous federal limitation period—section 10(b) of the NLRA, 29 U.S.C. § 160(b) (1976)—accommodated a balance of interests similar to those at stake in DFR claims. *Id.* at 2293.

We believe that these arguments apply with equal force to DFR claims under the RLA. First, the RLA provides for a uniform federal limitation period for all grievances against employers arising under the Act. 29 U.S.C. § 153 First (r) (1976). To the extent that DFR claims under the RLA must, like claims under the NLRA, be filed within the equivalent time for an action against the employer in order to recover full damages, a uniform federal standard would effectively govern such claims in any event. Cf. *DelCostello,* 103 S.Ct. at 2292. Second, lengthy state limitation periods for DFR claims pose no less a threat under the RLA than the NLRA; like the NLRA, the RLA is intended "to secure the prompt, orderly, and final settlement of grievances...." *Union Pacific R.R. v.*

---

**2.** The Court reasoned that the union may be held liable only for increases in damages caused by the union's refusal to process the grievance. 103 S.Ct. at 2292 (citing *Bowen v. United States Postal Serv.,* 459 U.S. 212, 103 S.Ct. 588, 593, 74 L.Ed.2d 402 (1983)). Thus, if a state limitation period were to govern, "a large part of the damages will remain uncollectible in almost every case unless the employee sues within the time allotted for his suit against the employer." *Id.* In Sisco's case, in which no allegation is made tying UTU's conduct to Conrail, this first rationale has little relevance. As a general matter, however—with which we are here concerned—the rationale continues to have force.

**3.** The Court concluded that state limitations periods applicable to actions to vacate arbitration awards afforded inadequate time for employees unsophisticated in collective bargaining matters to vindicate their rights against employers. 103 S.Ct. at 2291.

**4.** State limitation periods most clearly analogous—the statute of limitations for legal malpractice—typically provide for periods of three to six years. 103 S.Ct. at 2292 n. 18.

*Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam). Third, two plausible federal limitation periods are more analogous than state law limitation periods for legal malpractice: the two-year period of section 153 First (r) of the RLA, 45 U.S.C. § 153 First (r) (1976), and the six-month period of section 10(b) of the NLRA. *See* Part II B *infra.* As we argue below, at least one of these provisions represents Congress' evaluation of the appropriate balance of interests between the need for prompt resolution of disputes on the one hand, and the interest in assuring adequate representation of employees on the other.

Because the nature of a DFR claim is the same under the RLA and the NLRA, and because the arguments for a uniform limitation period apply with equal force to both statutes, we believe that a uniform federal standard governs DFR claims under the RLA as well as the NLRA. We turn, therefore, to consider the appropriate federal limitation period.

### B.

■ Two federal limitations periods arguably apply to DFR claims under the RLA: the two-year period for review of decisions of the NRAB under section 153 of the RLA, and the six-month period of section 10(b) of the NLRA.[5] Of course, section 10(b) of the NLRA is not by its terms applicable to suits under the RLA. 29 U.S.C. §§ 142(3), 152(3) (1976); *see Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 376, 89 S.Ct. 1109, 1114, 22 L.Ed.2d 344 (1969); *Raus v. Brotherhood Railway Carmen,* 663 F.2d 791, 794 (8th Cir.1981); *Brotherhood of Locomotive Firemen and Engine-*

*men v. United Transportation Union,* 471 F.2d 8, 9 (6th Cir.1972). Our concern here, however, is not with whether section 10(b) is expressly applicable, but whether, as a matter of federal common law, its six-month limitation period ought to be borrowed in DFR actions under the RLA for the failure to bring a claim before the Board.

We believe that the six-month period of section 10(b) of the NLRA should be applied to these cases. Several considerations inform our view. First, the two-year limitation period of section 153 of the RLA is on its face applicable only to actions to review an *award* of the NRAB, 45 U.S.C. § 153 First (r) (1976), not to actions alleging the failure to obtain an award. *See Hennebury v. Transport Workers Union of America,* 485 F.Supp. 1319, 1328 (D.Mass.1980). Actions of the latter kind would not accrue until the time for bringing an action before the Board had expired. Those time requirements are governed by limits provided in the collective bargaining agreement. *See Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 90, 99 S.Ct. 399, 400, 58 L.Ed.2d 354 (1978) (per curiam). Thus, the nature of judicial review of a Board order is very different from that appropriate to DFR proceedings. Board awards are reviewed under a narrow standard of review. *See Sheehan,* 439 U.S. at 93, 99 S.Ct. at 402.[6] The award on its face provides sufficient information for the reviewing court to exercise the requisite narrow scope of review. In a DFR claim for failure to bring a claim to the Board, in contrast, the inquiry is entirely distinct. The relevant question is whether the union discriminated or acted arbitrarily in failing to prosecute the claim during the limitation period prescribed by the collective bargain-

---

**5.** Sisco's claim may be time-barred by either limitation period. In order to avoid uncertainty in the application of the RLA, however, we deem it prudent to reach the question of which limitation period governs.

**6.** The standard of review is set forth in section 153 First (q):

On such review, the findings and order of the division [of the NRAB] shall be conclusive on all parties, except that the order of the divi-

sion may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of the chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q) (1976).

ing agreement. Because these claims need not be exhausted before the Board, *Czosek*, 397 U.S. at 27–28, 90 S.Ct. at 772–773, evidence must be taken by the trial court on the union's conduct during the contractual limitation period. There is a federal interest in the prompt resolution of these evidentiary disputes, especially in the collective bargaining context. Nothing suggests that the two-year limitation period for review of Board orders, which is peculiarly appropriate to our standard of review over those orders, would also be an appropriate limitation period on DFR claims. Thus, the two-year period of section 153 First (r) is not attuned to the proper balance of interests in DFR litigation.

Second, as noted above, the employee's cause of action would not accrue until the expiration of the contractual limitation period prescribed in the collective bargaining agreement. Such periods are characteristically as long as one year. *See Sheehan v. Union Pacific R.R.*, 576 F.2d 854, 857 (10th Cir.1978), *rev'd*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). A two-year limitation period would therefore generally not expire until three years after events giving rise to the grievance transpired. In *Del-Costello*, the Supreme Court condemned periods of limitation as long as three years precisely because that lengthy period would "preclude the relatively rapid final resolution of labor disputes favored by federal law." 103 S.Ct. at 2292. Moreover, the Court expressly held that the six-month limitation period of section 10(b) strikes the proper balance "between the national interests in stable bargaining relationships and finality of private settlements.'" *Id.* at 2294 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 70–71, 101 S.Ct. 1559, 1567–1568, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring)). We therefore believe that the six-month period strikes a similarly proper balance under the RLA.[7]

### III.

 Because Sisco's cause of action against UTU accrued more than six months before the initiation of this action, the claim is barred by the applicable statute of limitations. The judgment of the district court will therefore be affirmed.

7. In deciding that a six-month limitation period governs DFR claims alleging the arbitrary or discriminatory failure to prosecute a grievance before the NRAB, we do not reach the question whether a similar period necessarily applies to a DFR action for the arbitrary or discriminatory litigation of a *final Board award*, as to which a two-year limitation period applies for judicial review of the Board's order. No such final award is now before us.