790 F.2d 322
 122 L.R.R.M. (BNA) 2700, 104 Lab.Cas. P 11,960
 John R. MASY, Michael Sanok, Ralph N. Francavilla, Robert
Lyons, Joseph M. Pinto, and Tom Alcamo, Appellants
v.
NEW JERSEY TRANSIT RAIL OPERATIONS, INC., International
Brotherhood of Electrical Workers, International Brotherhood
of Electrical Workers, Local 604, and International
Brotherhood of Electrical Workers, Local 748.
 No. 85-5604.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
April 17, 1986.
Decided May 2, 1986.
Rehearing and Rehearing
In Banc Denied May 27, 1986.
 
 Arthur M. Shara, Union, N.J., for appellants.
 Michael S. Wolly, Gregory K. McGillivary, Mulholland & Hickey, Washington, D.C., Irwin I. Kimmeiman, Atty. Gen. of N.J., for appellee Unions; James J. Ciancia, Asst. Atty. Gen., of counsel.
 Robert H. Stoloff, Deputy Atty. Gen., Newark, N.J., on brief, for appellee, New Jersey Transit Operations, Inc.
 Before ADAMS, GIBBONS and STAPLETON, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 This is an action brought by employees against their employer, New Jersey Transit Operations, Inc. (NJT), alleging a violation of an implementing agreement and a collective bargaining agreement under which NJT took over the operation of certain New Jersey commuter rail lines from the Consolidated Rail Corporation (Conrail) and their union, International Brotherhood of Electrical Workers and Local 604 and 748 (Union), for allegedly breaching its duty of fair representation. The district court dismissed the employees' claim against NJT on jurisdictional grounds and granted summary judgment in favor of the Union. We affirm.
 
 
 2
 Plaintiffs are electricians employed by NJT and members of the Union, which is the exclusive collective bargaining representative for NJT employees in the electricians' craft. The plaintiffs formerly worked for Conrail and two of Conrail's predecessor railroads: the Erie Railroad, and the Central Railroad of New Jersey. On January 1, 1983, the plaintiffs became employees of NJT when NJT took over certain commuter rail operations from Conrail pursuant to the Northeast Rail Service Act of 1981, 45 U.S.C. Secs. 1101-1116 (1982). To accomplish this takeover, NJT entered into an implementation agreement with Conrail and the Union, as required by section 508 of the Rail Passenger Service Act, 45 U.S.C. Sec. 588 (1982). The implementing agreement provided that former Conrail employees would retain seniority reflective of the dates of their earliest employment with either Conrail or one of its predecessor railroads. The Rail Passenger Service Act also required that once an implementing agreement was established, NJT and the Union were to negotiate new collective bargaining agreements. See 45 U.S.C. Sec. 590 (1982). Following the imposition of the implementing agreement, NJT and the Union negotiated and agreed upon two collective bargaining contracts--one covering electricians in the Maintenance of Equipment Department and one for electricians in the Electric Traction Department. These agreements provide for seniority by department.
 
 
 3
 The distinction between these two departments, both of which employ electricians, arises out of an historical practice. Because the Lackawanna Railroad, another predecessor of Conrail, was electrified, it had separated the work of maintaining and repairing its electrical power lines and substation (referred to as electric traction work) from the electrical maintenance and repair work on locomotives and passenger railroads (referred to as maintenance of equipment work). Electricians employed within the Electric Traction Department were also responsible for maintaining and repairing the electrical work at stations, bridges, and buildings. (This work is referred to as maintenance of facilities.) The Erie and Central New Jersey, by contrast, were not electrified and therefore electricians were separated by geographic locations, not job functions. Accordingly, while Lackawanna electricians were limited in their job function, some Erie and Central New Jersey electricians performed both equipment and facility repair work. These distinctions continued after Erie merged with Lackawanna in 1960 and after Conrail assumed operational control of both the Erie-Lackawanna and Central New Jersey in 1976.
 
 
 4
 When NJT took over Conrail's operations, it continued to separate the maintenance of equipment function from the electric traction function. NJT, therefore, created two departments: Maintenance of Equipment and Electric Traction. In addition to the responsibility for the maintenance of electric traction, the Electric Traction Department was given primary responsibility for the maintenance of facilities. Hence, when NJT and the Union negotiated new collective bargaining contracts, they created separate agreements for each department. During negotiations over the agreements, it was discovered that eight electricians in the Maintenance of Equipment Department were performing the maintenance of facilities work they had historically done on the Erie and Central New Jersey lines. The plaintiffs are among these eight electricians. NJT and the Union were unable satisfactorily to agree on the status of these employees and are still in the process of resolving this issue. In the meantime, however, the electricians assigned to the Maintenance of Equipment Department, but performing the maintenance of facilities tasks they have historically done, have been kept on the Maintenance of Equipment seniority list. Apparently, since NJT's takeover more maintenance of facilities work has been generated and that work has been assigned to the Electric Traction Department. As a result, although the plaintiffs have continued to do the work they historically performed, electricians in the Electric Traction Department have had more overtime assignments per employee than plaintiffs have had. Moreover, because seniority is based on department time electricians in the Electric Traction Department who have less company seniority than plaintiffs would be senior to plaintiffs if plaintiffs transferred to the Electric Traction Department.
 
 
 5
 Believing that their seniority rights were being violated, plaintiffs filed grievances with both the Union and NJT. The plaintiffs allege, and we accept as true in the context of this summary judgment proceeding, that neither the Union nor NJT acted on those grievances. Plaintiffs, therefore, brought this suit charging NJT with a breach of contract and the Union with two breaches of its duty of fair representation.
 
 I.
 Jurisdiction
 
 6
 As best we can make it out, the plaintiffs' complaint alleges that both the implementing agreement and the collective bargaining agreement covering electricians in the Maintenance of Equipment Department require seniority by craft. Therefore, plaintiffs claim that NJT breached these agreements by creating a separate seniority roster for electricians in the Electric Traction Department. The district court, however, never reached the merits of this claim because it found that the dispute was within the exclusive jurisdiction of the National Rail Adjustment Board (NRAB) and that plaintiffs' action against NJT lay with that administrative body. Masy v. New Jersey Transit Rail Operations, Inc., No. 84-521, slip op. at 3 (D.N.J. Sept. 7, 1984).
 
 
 7
 The plaintiffs argue that section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185 (1982), provides the jurisdictional grant for their suit against NJT. The district court, however, correctly held that the LMRA expressly excludes employees and employers governed by the Railway Labor Act, 45 U.S.C. Secs. 151-188 (1982), from its coverage. See 29 U.S.C. Sec. 152(2), (3) (1982); Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 376, 89 S.Ct. 1109, 1114, 22 L.Ed.2d 344 (1969). Hence plaintiffs' federal claim against NJT must rely on the Railway Labor Act.
 
 
 8
 Section 3 of the Railway Labor Act provides for the administrative adjudication by the NRAB of minor disputes between employees and a railroad that grow out of grievances or an interpretation of a collective bargaining agreement. 45 U.S.C. Sec. 153 First (i) (1982). In most cases, the administrative procedures provided by the Railway Labor Act are considered the exclusive procedures available to employees who have minor disputes with a railroad. See Andrews v. Louisville & Nashville Railroad, 406 U.S. 320, 322, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972). There are, however, three exceptions to the exclusive jurisdiction of the NRAB: "(1) when the employer repudiates the private grievance machinery; (2) when resort to administrative remedies would be futile; and (3) when the employer is joined in a [duty of fair representation] claim against the union." Sisco v. Consolidated Rail Corp., 732 F.2d 1188, 1190 (3d Cir.1984). The plaintiffs' seniority dispute with NJT involves an interpretation of the collective bargaining agreements, as well as an interpretation of the implementing agreement, and is a minor dispute governed by section 3 of the Railway Labor Act. See id.; International Association of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700, 705 (3d Cir.1982). Therefore, unless one of the exceptions to the NRAB's exclusive jurisdiction applies, the plaintiffs' claim against NJT must be dismissed.
 
 
 9
 The employees contend that their claim falls within the first exception because they filed grievances with both the Union and NJT and neither the Union nor NJT acted on those grievances. The district court found no merit in this argument, concluding that "the complaint alleges that the grievance procedure was never properly invoked." Masy, No. 84-521, slip op. at 3. It appears that the district court was referring to paragraph 11 of the complaint in which the employees allege that the Union never filed their grievances with NJT. See Joint Appendix at 6. In paragraph 12 of the complaint, however, plaintiffs allege that following the inaction by the Union, the employees on their own filed grievances with NJT. Id. The collective bargaining agreement between NJT and the electricians in the Maintenance of Equipment Department provides, "A claim or grievance must be presented in writing by an employee or on his behalf by a union representative, to the employee's General Foreman or other designated officials...." Joint Appendix at 93. Thus on the record before us it appears that the grievances were properly filed. However, even if we assume that the grievances were properly filed and NJT took no action on them, these facts are insufficient to support jurisdiction under the grievance repudiation exception.
 
 
 10
 The Railway Labor Act's administrative remedy is a statutory grievance procedure that can be invoked by the employee. 45 U.S.C. Sec. 153 First (i) (1982). Because the employees have this alternative procedure available, the grievance-repudiation exception to the NRAB's exclusive jurisdiction is not triggered merely because there was a failure to grieve under the contract. Our decision in Sisco did not examine the grievance-repudiation exception, but the cases it cited in holding that such an exception exists involved situations in which resort to the contract-grievance procedure would be meaningless. See Czosek v. O'Mara, 397 U.S. 25, 29, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970) (allegations that the employer participated in the union's allegedly discriminatory decision not to process employees' grievance) (dicta); Glover v. St. Louis-San Francisco Railway, 393 U.S. 324, 329-30, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969) (allegations of racial discrimination on the part of both the employer and the union). For the exception to apply, the employee's claim against the railroad should involve an issue that does not directly relate to the interpretation of a collective bargaining agreement. See Glover, 393 U.S. at 329, 89 S.Ct. at 551 (allegations of racial discrimination); Goclowski v. Penn Central Transportation Co., 571 F.2d 747, 756-57 (3d Cir.1977) (allegations of failure to ratify an agreement). But cf. Raus v. Brotherhood Railway Carmen, 663 F.2d 791, 798 (8th Cir.1981). In the present case, plaintiffs' claim against NJT involves an interpretation of the implementing agreement and the collective bargaining agreements regarding seniority rights. NJT's alleged failure to grieve does not affect the nature of that claim as a contract interpretation action. Thus the grievance repudiation exception does not apply in this case.
 
 
 11
 The second exception to the NRAB's administrative procedures arises when resort to the NRAB would be futile. This exception does not apply here because employees have a right to institute such administrative proceedings and there is nothing in the record that would indicate that these administrative procedures would not provide the relief plaintiffs seek.
 
 
 12
 With respect to the third exception, we have explained that "an employer may be joined in a [breach of duty of fair representation] action against the union if facts are alleged tying the employer to the events complained of." Sisco, 732 F.2d at 1190. In their complaint plaintiffs allege that there was a "community of purpose" between the Union's alleged breach of its duty and NJT's participation in that breach. As the district court correctly reasoned, however, this conclusory allegation is insufficient to link NJT to the Union's alleged breach of its duty of fair representation. Although the alleged breach of duty by the Union and the alleged breach of contract by NJT arose out of the same event--the negotiation of the second collective bargaining agreement covering electricians in the Electric Traction Department--the claims against the Union and NJT are separate and distinct. See Raus, 663 F.2d at 798 (requiring collusion or some similar nexus between the union and the employer).
 
 
 13
 Finally, under the third exception this court has left open the question whether the employer may be joined to the breach of fair representation claim where no facts tie the employer to that claim but the employer's presence is necessary for complete relief. See Sisco, 732 F.2d at 1190-91. The plaintiffs in this appeal ask us to address this open question, arguing that they seek an order directing the merger of the two seniority lists and that the employer is a necessary party if that order is to be effective. To the extent that the presence of the employer is necessary for complete relief in the breach of the duty of fair representation claim against the union, the presence of the employer should not be a means of circumventing the NRAB's exclusive jurisdiction over minor contractual disputes. Thus, it may be appropriate to join an employer to a breach of duty of fair representation claim so that binding arbitration or some similar remedy may be ordered, but it would not be appropriate to extend that limited presence into a grant of jurisdiction allowing the district court to adjudicate the employees' minor contractual dispute with the employer. In the instant case it is not necessary to join NJT even for a limited purpose because, as will be discussed, the district court properly dismissed the breach of duty of fair representation claim on a motion for summary judgment.
 
 II.
 Duty of Fair Representation
 
 14
 The plaintiffs' complaint appears to assert that the Union committed two breaches of its duty of fair representation. First, the plaintiffs allege that the implementing agreement required seniority by craft and that the Union had violated that agreement by entering into two collective bargaining agreements that provided for seniority by department. Second, the plaintiffs contend that the Union breached its duty of fair representation by not processing their grievances concerning the seniority dispute. These breaches of duty of fair representation claims are not subject to the exclusive jurisdiction of the NRAB. Sisco, 732 F.2d at 1191; see also DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983). The district court, therefore, considered the merits of plaintiffs' breach of duty of fair representation claims but granted summary judgment in favor of the Union. See Masy v. New Jersey Transit Rail Operators, Inc., No. 84-521 (D.N.J. Aug. 20, 1985).
 
 
 15
 The duty of fair representation is a judicially-created rule designed to afford individual employees a certain degree of protection against discriminatory treatment by a union. See Steele v. Louisville & Nashville Railroad, 323 U.S. 192, 202-03, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944). The rule is a counterbalance to the union's position as exclusive bargaining representative. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976); Riley v. Letter Carriers Local No. 380, 668 F.2d 224, 228 (3d Cir.1981). However, because a union must attempt to satisfy the collective needs of a group of employees, a certain amount of discretion must be given to the union. See Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). Therefore, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); see also Riley, 668 F.2d at 228.
 
 
 16
 The plaintiffs' complaint contains no allegations that would support a finding of bad faith or arbitrary conduct. Although the plaintiffs make bare assertions of arbitrary conduct, they do not support these claims with actual factual allegations. The distinction between the Electric Traction and Maintenance of Equipment departments is reasonable. The work historically has been segregated, and the decision to separate seniority by department is logical given this historic practice. That the Union agreed to leave certain electricians, including the plaintiffs, in a department that handles a different kind of work because of historical reasons cannot, on this record, be called arbitrary. See Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1014-17 (3d Cir.1977) (holding that a collective bargaining agreement could make seniority distinction based on job function), cert. denied, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). Moreover, there is nothing to indicate that the Union has ignored the plaintiffs' grievances because of bad faith. The Union has submitted an affidavit stating that it has attempted, and is continuing to attempt, to negotiate a resolution of the assignment-to-department problem. See Joint Appendix at 32-34.
 
 Conclusion
 
 17
 The district court did not err in dismissing the contract interpretation claim against NJT. Nor did the court err in granting summary judgment in favor of the Union on the breach of duty of fair representation claims. The proper forum for the employees' seniority dispute with NJT is the NRAB. Read generously, the plaintiffs' complaint may also state claims for violation of the Rail Passenger Service Act. The proper forum for those claims, however, is the Special Court for Regional Rail Reorganization set up by the Rail Passenger Service Act (as amended by the Northeast Rail Service Act of 1981), which has exclusive jurisdiction over such claims. See 45 U.S.C. Sec. 1105(a) (1982). In fact the plaintiffs have filed a complaint with the Special Court. See Masy v. New Jersey Rail Operations, Inc., No. 85-04 (Sp.Ct.R.R.R.A. filed Feb. 15, 1985). We, therefore, will affirm both judgments of the district court.