**Faye Maxine BELL**

v.

**ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY; Transportation Communications Union.**

Civ. A. No. B–89–0655–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 18, 1990.

Stuart M. Nelkin, Kathy D. Boutchee, Nelkin & Nelkin, Houston, Tex., for plaintiff.

Benjamin R. Powel, McLeod, Alexander, Powel & Apffel, Galveston, Tex., G. William Baab, Mullinax, Wells, Baab & Cloutman, P.C., Dallas, Tex., for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiff brought suit in the 88th Judicial District of Hardin County, Texas, on June 14, 1989. Plaintiff's original petition alleged: (1) age discrimination and violation of the Texas Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. Art. 5221k (Vernon Supp.1988); (2) violation of an implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; and (4) breach of the duty of fair representation.

On July 7, 1989, the defendants removed this cause from the 88th Judicial District Court to the United States District Court for the Eastern District of Texas, asserting federal question jurisdiction, and citing 28 U.S.C. § 1446. In the removal petition, defendants argue that the causes of action brought by the plaintiff are in fact governed by collective bargaining agreements between the railroad and plaintiff's collective bargaining representative, the Transportation Communications Union (TCU or the Union). As such, defendants contend plaintiff's rights arise under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*

On August 24, 1989, plaintiff filed her first amended original complaint, containing the same claims as those alleged in the petition filed in state court. Plaintiff received a right to sue letter from the Texas Commission on Human Rights as to each defendant. Plaintiff also received a letter from the Equal Opportunity Commission (EEOC), advising her that the EEOC had terminated its investigation of the TCU at the request of plaintiff's counsel.

Before the court are defendants' motions to dismiss, or in the alternative, for summary judgment, each filed on February 23, 1990.

### FACTS

The following facts were produced through deposition testimony and exhibits thereto.

The plaintiff is a resident of Silsbee, Texas. She was born November 7, 1932, and commenced employment with the Atchison, Topeka & Santa Fe Railroad (the Santa Fe or the Railroad) in April of 1974, when she was 42 years old. Plaintiff's employment with the Railroad continued until voluntary severance by the plaintiff on July 12, 1988.

Beginning in May of 1988, the Santa Fe commenced the task of consolidating and reorganizing its clerical divisions in Texas. In the process, the Railroad consolidated fourteen divisions into six divisions. As a result, there are now six division managers' offices, instead of fourteen superintendents' offices, and staff has been reduced accordingly. This restructuring was an attempt to decrease overhead so that the Santa Fe could continue as a viable and competitive transportation company. As a part of this consolidation, the plaintiff's former Southern Division Seniority District was merged with the former Northern Division Seniority District into a new "Texas Division." This consolidation was physically accomplished by transferring a large number of former Southern Division personnel to Fort Worth, Texas.

Before discussing the actual implementation of the consolidation, the court notes that the plaintiff was a local union officer. As such, she received copies of implementing agreements between the Railroad and the Union regarding the ongoing consolidation.

By letter dated April 27, 1988, the Santa Fe notified TCU that it was consolidating the Northern and Southern Divisions, effective August 1, 1988. The letter listed positions to be abolished, and new positions to be posted (Bell dep., Ex. 1–2b). Included among the positions to be abolished was that of steno to the trainmaster in Silsbee. This was the position held by the plaintiff. According to her deposition, plaintiff saw this letter some time in mid June, 1988. On June 28, 1988, the Union and the Railroad entered into an implementing agreement consolidating the superintendents' offices of the Southern and Northern Division Seniority Districts. The agreement states that, effective July 31, 1988, seventeen positions in the Southern Division, including plaintiff's, were abolished. Effec-

tive that same date, twelve positions would be established in the new Texas Division.

Under this agreement, affected employees had the option of (1) exercising their seniority rights to obtain one of the positions remaining within the Southern Division; (2) if unable to hold one of the remaining positions, accepting a furlough; (3) accepting a position in Fort Worth; or (4) resigning and accepting a severance allowance of approximately $38,000. Deposition testimony indicates that the plaintiff received a copy of this implementing agreement in early July 1988. On July 12, 1988, plaintiff was contacted by phone in joint conversation with the local union officer Ron Rice, and a Santa Fe official, Charles Wamack.

In this telephone conversation, plaintiff was given the following options: (1) take a furlough and remain in Silsbee, Texas; (2) accept an available position and transfer to Fort Worth, Texas; or (3) resign and terminate all rights to employment and take her severance pay. Rice and Wamack also sent by FAX machine an opinion election form indicating the above choices for the plaintiff to review. Plaintiff admits that she had an opportunity to review the form and understood the consequences of electing each option on the form. Plaintiff elected to resign and accept the severance payment, signing the option form listing the three choices noted above, and checking the box next to the severance option.

In her deposition, plaintiff testified there were three reasons that she did not accept the available Fort Worth steno job. First, plaintiff testified that she was concerned that if she accepted the position in Fort Worth, she might be displaced, and unable to hold that position. Second, plaintiff stated that she was told that she would continue to be used as a part time employee or that somehow her job would be kept on. Third, plaintiff stated that she did not want to go to Fort Worth because she did not want to move and be separated from her husband.

Plaintiff at no time filed a grievance with the Union regarding any discriminatory action taken by either the Union or the Railroad. Plaintiff stated in her deposition that she had been a local officer of the Union for a number of years, that she was aware that the Union had internal appeals procedures, that in order to avail herself in the appeals process, she had to file a grievance and that she elected not to exercise her rights under the Union's internal appeals procedures.

The Collective Bargaining Agreement contains provisions for positions excepted from the seniority rules. These positions are known as PAD positions. These positions are posted like all others, but are not necessarily filled on the basis of seniority. Such a PAD position as steno to the superintendent in Pearland, Texas, was contained in the implementing agreements the plaintiff saw. The position was listed as "to be established."

Plaintiff's last day of employment was July 29, 1988. On that date, she was issued a lump sum severance pay check. On August 3, 1988, the PAD position of steno in Pearland, much closer to plaintiff's home, was bulletined. Plaintiff saw this bulletin in August. Although she felt aggrieved that the position had not been offered to her earlier, she did not so notify any officer of the Union or the Railroad. She did not apply for this position before electing severance. After plaintiff's resignation, she did not apply for re-employment in the Pearland position.

## THE RAILROAD

At the outset, it is necessary to determine the nature of plaintiff's claim against the Railroad. It is clear that Santa Fe is an interstate carrier by rail, and as such, its labor relations are subject to and governed by the requirements of the Railway Labor Act (R.L.A.). 45 U.S.C. § 151 *et seq.* The threshold question is the exclusivity of the R.L.A. and its application to the plaintiff's claims. The R.L.A. creates the National Railroad Adjustment Board as the exclusive mechanism for resolving "minor" disputes between railroads and their employees. *See, Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92

S.Ct. 1562, 32 L.Ed.2d 95 (1972). According to the Supreme Court, a minor dispute:

> [C]ontemplates the existence of a collective agreement already concluded, or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. *Elgin, Joliet & Eastern Railway v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). Minor disputes are subject to the exclusive jurisdiction of the N.R.A.B. 45 U.S.C. § 153. *See, Allied Pilots Association v. American Airlines, Inc.,* 898 F.2d 462 (5th Cir.1990); *Morales v. Southern Pacific Transportation Co.,* 894 F.2d 743 (5th Cir.1990); *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 321–26, 92 S.Ct. 1562, 1563–66, 32 L.Ed.2d 95 (1972). The Arbitration Board has exclusive jurisdiction over minor disputes. *Consolidated Rail v. Labor Executives,* 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989).

■ Plaintiff's claims under Texas state law cannot be resolved without interpreting the collective bargaining agreement between the Railroad and the Union. Such claims amount to minor disputes, and are subject exclusively to resolution by arbitration under the Railway Labor Act. 45 U.S.C. § 151 *et seq.* Accordingly, plaintiff's claims against the railroad are preempted, and this court is without jurisdiction over those claims.

The plaintiff will have to proceed, if she can, before the N.R.A.B. The Railroad's motion for summary judgment is GRANTED.

### THE UNION

The causes of action against TCU are the same as against the Railroad. Like the Railroad, TCU maintains the causes of action are preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* This is true, argues the Union, because every grievance by the plaintiff emanates from the manner in which consolidation procedures and the utilization of PAD positions were carried out. All these actions took place via implementing agreements regulated by the collective bargaining agreement. The Union maintains that the plaintiff's claims against it are in fact a claim of breach of the Union's duty of fair representation arising from the R.L.A., in the clothing of state law claims. As such, the claims must be submitted to arbitration procedures established by the R.L.A.

■ The United States Supreme Court recognized a duty of fair representation owed by a union under the R.L.A. in *Steele v. Louisville and Nashville Railroad Co.,* 323 U.S. 192, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944), and under the N.L.R.A. in *Ford Motor Co. v. Huffman,* 345 U.S. 330, 337, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). *See also, Vaca v. Sipes,* 386 U.S. 171, 188, 87 S.Ct. 903, 915, 17 L.Ed.2d 842 (1967). This duty is owed by the union that has the exclusive power to bargain for a group of employees; the union must represent all members of that group fairly. *Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1191–92 (3rd Cir.1984) (Supreme Court established the duty under the Railway Labor Act first and then extended it to the National Labor Relations Act).

The Fifth Circuit has held the duty of fair representation owed by a union is the same under the R.L.A. and the National Labor Relations Act (N.L.R.A.) *Brock v. Republic Airlines, Inc.,* 776 F.2d 523, 525 (5th Cir.1985). Decisions interpreting the duty of fair representation under the R.L.A. and the N.L.R.A. are commonly cited without distinction by federal courts. The Supreme Court of the United States stated the correlation:

> [T]he statutory duty of fair representation was developed over twenty years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, *see Steele v. Louisville & N.R. Co.,* 323 U.S. 192 [65 S.Ct. 226]; *Tunstall v. Brotherhood Locomotive Firemen,* 323 U.S. 210 [65 S.Ct. 235, 89 L.Ed. 187 (1944) ], and was soon extended to unions certified under

the N.L.R.A., *see Ford Motor Co. v. Huffman, supra.*

*Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). In *United Steelworkers v. Rawson,* —— U.S. ——, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), the Court cited cases dealing with the N.L.R.A.: *Breininger v. Sheet Metal Workers,* 493 U.S. ——, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989); *DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring in judgment); and cases involving the L.M.R.A.: *Electrical Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *See also McCall v. Chesapeake & Ohio Railway Co.,* 844 F.2d 294 (6th Cir.), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988) (Doctrine of Preemption).

Considering the foregoing, a reading of the Supreme Court's recent case *United Steelworkers of America v. Rawson,* —— U.S. ——, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) is instructive. In *Rawson,* the court held, *inter alia,* a claim against a union that involves a breach of duty arising out of or governed by the collective bargaining agreement is preempted by § 301 of the Labor Relations Management Act (L.M.R.A.):

> [Q]uestions relating to what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211 [105 S.Ct. 1904, 1911, 85 L.Ed.2d 206] (1985)).

The question is whether plaintiff's state law claims are sufficiently independent of the collective bargaining agreement to avoid preemption by federal labor law. *Rawson.*

■ An examination of the pleadings, affidavits and deposition testimony reveals that the plaintiff's complaint arises from her grievance as to the union's method of implementing its consolidation procedure, specifically its methodology in awarding PAD positions to employees. A determination of the propriety of the actions on the part of TCU necessarily involves the construction of the terms of the Collective Bargaining Agreement.

Once again, this court is without jurisdiction over these claims; the plaintiff's claims against the Union are pre-empted. She must proceed, if she can, before the N.R.A.B. The Union's motion for summary judgment is GRANTED.