**Brian L. NICELY, individually and as representative of a Class of Plaintiffs, comprised of Employees of USX and Members of USWA, Plaintiff,**

v.

**USX (formerly United States Steel), a corporation, and United States Steelworkers of America, AFL–CIO, a labor organization, Defendants.**

Civ. A. No. 87–2429.

United States District Court,
W.D. Pennsylvania.

July 24, 1991.

James N. Perich, Mohan & Perich, Pittsburgh, Pa., for plaintiff.

Richard J. Brean, Asst. Gen. Counsel, Legal Dept., Billy M. Tennant, USX Corp., Law Dept., Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

The instant matter is before the court on motions for summary judgment filed on behalf of the defendants, USX and United Steelworkers of America ("USWA"). Plaintiff Brian Nicely is employed as a welder at the Edgar Thomson Plant in Braddock, Pennsylvania.

Nicely's claim against USX arises under section 301 of the Labor Management Relations Act of 1947, which authorizes suits in the district court for "violations of contracts between an employer and an organization representing employees." 29 U.S.C. § 185 (1982). If the collective bargaining agreement contains procedures for the settlement of disputes through grievance and arbitration, these contractual remedies are binding on individual employees, and their section 301 suits must be dismissed if those remedies have not been exhausted. *Ames v. Westinghouse Electric Corp.*, 864 F.2d 289, 292 (3d Cir.1988).

The exhaustion of contract remedies rule is in turn limited by the exception that if a union, in breach of its duty of fair representation, fails to process the employee's claim through the contract resolution process, the employee can bring a hybrid section 301 action against both the employer and the union. *Bowen v. United States Postal Service*, 459 U.S. 212, 221–22, 103 S.Ct. 588, 594–95, 74 L.Ed.2d 402 (1983); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Plaintiff alleges that defendant USX Corporation breached the collective bargaining agreement by "arbitrarily reclassifying job titles and job duties at its Edgar Thomson Works without giving the compensation required by the collective bargaining agreement, and without following the procedures set forth in the collective bargaining agreement for job reclassification and/or local manning agreements." (Plaintiff's complaint at Count 1).

Plaintiff next alleges that the USWA has "breached its duty of fair representation by a labor organization by: (a) neglecting to process the plaintiff's grievance; (b) refusing to process the appeal of plaintiff's grievance; (c) failing to oppose the job reclassification as violative of the collective bargaining agreement; (d) failing to advance the interests of the plaintiffs in view of the job reclassification by defendant USX; (e) otherwise failing to act in accordance with its fiduciary responsibility under the circumstances." (Plaintiff's complaint at Count II).

Defendant USX filed a motion for summary judgment on April 18, 1991. Defendant USWA moved for summary judgment on May 2, 1991. Summary judgment is granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, a court must make all reasonable inferences in favor of the non-movant. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. dismissed, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. Id. Moreover, if

the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Therefore, when the non-moving party's evidence is merely "colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

■ A labor union has a duty to fairly represent all the employees within the collective bargaining unit in disputes with the employer arising out of the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909–910, 17 L.Ed.2d 842 (1967). The duty of fair representation is inferred from the union's exclusive authority under the National Labor Relations Act, 29 U.S.C. § 159(a), to represent all employees in a bargaining unit. Id. The union must pursue employee's grievances "in a manner consistent with the principles of fair representation." *Chauffeurs, Teamsters and Helpers, Local 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990).

■ This court is fortunate to have the guidance of a very recent Supreme Court pronouncement on a union's duty of fair representation. In a decision handed down on March 19, 1991, the Supreme Court, in the case of *Air Line Pilots Assn. v. O'Neill*, — U.S. —, 111 S.Ct. 1127, 1134–35, 113 L.Ed.2d 51 (1991), stated:

"Although there is admittedly some variation in the way in which our opinions have described the unions' duty of fair representation, we have repeatedly identified three components of the duty, including a prohibition against "arbitrary" conduct. Writing for the court in the leading case in this area of the law, Justice White explained:

"The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, see *Steele v. Louisville & N.R. Co.*, 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173]; *Tunstall v. Brotherhood of Locomotive Firemen*, 323 U.S. 210 [65 S.Ct. 235, 89 L.Ed. 187] (1944), and was soon extended to unions certified under the N.L.R.A., see *Ford Motor Co. v. Huffman*, supra [345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)]. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Humphrey v. Moore*, 375 U.S. 335, at 342 [84 S.Ct. 363, at 367–68, 11 L.Ed.2d 370] (1964)."

Claims that the union may have acted negligently or exercised poor judgment are insufficient to support a claim of unfair representation. *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970). Moreover, in *Masy v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322 (3d Cir.1986), the Third Circuit, in affirming summary judgment granted by the district court, held that "bare assertions" of arbitrary or bad faith conduct by the union, unsupported by factual allegations, could not support a finding that the union breached its duty to fairly represent plaintiff. Id. at 328.

■ In 1985 and 1986, the local union and USX negotiated for a new plant manning agreement. The objective of USX in the negotiations was to combine the various mechanical and electrical crafts into two supercraft jobs, mechanical repairman and electrical repairman.

With the implementation of the new maintenance manning agreement, the plaintiff, who had been a Job Class 14 intermediate rate welder, received a Job Class 20 as a result of his job being combined into the mechanical repairman's job. In fact, the granting of a Job Class 20 meant that every employee covered by the new maintenance manning agreement would get an immediate raise, many by as many as six

job classes, similar to the situation of the plaintiff. Plaintiff was unhappy with this arrangement, and he argued during negotiations with USX that the two supercrafts should be given a Job Class 21. His viewpoints, either at that point in time or later, clearly failed to carry the day among his fellow union members.

Dissatisfied with the tentative agreement, the plaintiff sent an open letter to his fellow maintenance employees decrying the proposed agreement. Despite this effort, the local union membership on June 11, 1986, overwhelmingly approved the manning agreement by a vote of 628 to 203. The maintenance manning agreement was signed by the parties on July 8, 1986, and implemented on February 1, 1987, following a lockout by USX.

Upon the implementation of the maintenance manning agreement, James Brewer, the Local Union Classification Chairman, was approached at his office in the plant by the plaintiff. Mr. Nicely wanted Mr. Brewer to file a written grievance contesting USX' job descriptions and classifications for three new jobs. Mr. Brewer explained to the plaintiff that a grievance is to be filed by the Local Union Classification Committee only if the parties cannot agree on a job classification and description. Since the parties were still discussing the classifications, Mr. Brewer refused to file the grievance.

The pleadings aver nothing more than that the plaintiff is displeased that his viewpoint did not prevail either in the negotiation stage or in the implementation of the agreement. There is simply nothing arbitrary about the way the union represented the plaintiff. The plaintiff's claims against the union are similar in tone and content to those discussed in the case of *Masy v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322 (1986). In upholding the district court's grant of summary judgment to the union, the court stated:

> The plaintiff's complaint contains no allegations that would support a finding of bad faith or arbitrary conduct. Although the plaintiffs make bare assertions of arbitrary conduct, they do not support these claims with actual factual allegations. The distinction between the Electric Traction and Maintenance of Equipment departments is reasonable. The work historically has been segregated, and the decision to separate seniority by department is logical given this historical practice. That the union agreed to leave certain electricians, including the plaintiffs, in a department that handles a different kind of work because of historical reasons cannot, on this record, be called arbitrary. *See Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1014–17 (3d Cir.1977) (holding that a collective bargaining agreement could make seniority distinction based on job function). Moreover, there is nothing to indicate that the union has ignored the plaintiff's grievances because of bad faith. Id. at 328.

In a similar manner in the case at hand, it cannot be said that separate job classifications worked out between the union and the company over a prolonged period of time are arbitrary. Nor can James Brewer's refusal to file the grievance on the plaintiff's behalf be said to constitute bad faith. The resulting distinctions in job classifications, like those discussed in *Masy*, appear logical because of historical and practical reasons, including the continued viability of the steel mill, and cannot, on this record, be called arbitrary.

It has not escaped this court's notice that the Edgar Thomson plant is still in operation as of this point in time, while many of its counterparts up and down the Mon Valley are being dismantled for nothing more than their scrap metal. It appears from the record that all parties, especially the union, took the possibility of the plant closing into their deliberations regarding the revised manning agreement. In other words, the action of the union was anything but arbitrary. Good faith negotiations were capped with a new job classification agreement after the plaintiff's peers voted overwhelmingly to approve the agreement. The plaintiff's long and loud opposition to the agreement was not convincing to his peers, and his recalcitrance

to accept the agreement cannot serve as a basis for a finding that the union has breached a duty of fair representation. As a result, the motion of the United Steelworkers of America for summary judgment will be granted.

■ The court will next take up the plaintiff's averments that USX breached the collective bargaining agreement by arbitrarily reclassifying job titles and duties. As a result of the manning agreement, all mechanical type craft jobs were merged into a single job of Mechanical Repairman, and all electrical type craft jobs were merged into a single job of Electrical Repairman.

The crux of the plaintiff's claims against USX is that the company "has arbitrarily reclassified job titles and duties without authority and union consent required by the Collective Bargaining Agreement covering job classifications such as this." (Plaintiff's complaint at Count I). It does not appear to the court that USX arbitrarily reclassified the mechanical and electrical type jobs. Rather the creation of the new positions of Mechanical Repairman and Electrical Repairman was the result of good faith bargaining between USX and the collective bargaining representatives of the maintenance and electrical employees. This bargaining took place over a two year period, and was overwhelmingly approved in a vote by the affected employees. The court is unsure whether the plaintiff is arguing that a collective bargaining agreement, once ratified, can never be revisited upon the consent of all the parties. Such a position has no support in the caselaw, and appears untenable.

It is simply not the case that USX has arbitrarily classified job titles without authority and union consent. All parties have acknowledged that the new job classifications were arrived at after the consent of all the parties, including the union. Because the consent was not unanimous does not make the manning agreement arbitrary. As a result, the motion of defendant USX for summary judgment will also be granted.

This is a case where the moving parties have carried their burden of establishing the absence of a genuine issue of material fact. Subsequently, the burden shifts to the plaintiff to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Zenith Radio Corp.*, supra, 475 U.S. at 586, 106 S.Ct. at 1356. The plaintiff has not met the burden that has shifted to him to avoid summary judgment, and as a result the defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56(c) will be granted.